Daniel Kalish, OSB No. 111529
Shemia Fagan, OSB No. 093476
HKM EMPLOYMENT ATTORNEYS LLP
308 SW First Avenue, Suite 325
Portland, OR 97204
Telephone: (503) 389-1130
dkalish@hkm.com
sfagan@hkm.com

Jason A. Rittereiser, WSBA No. 43628
(admitted *pro hac vice*)
HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, WA 98101
Telephone: (206) 826-5358
jrittereiser@hkm.com

Of Attorneys for Plaintiff Coty Richardson

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| COTY RICHARDSON,<br><br>            Plaintiff,<br><br>v.<br><br>NORTHWEST CHRISTIAN UNIVERSITY,<br>an Oregon Corporation,<br><br>            Defendant. | No. 6:15-cv-01886-AA<br><br>**PLAINTIFF'S MOTION FOR<br>PARTIAL SUMMARY JUDGMENT<br>AND SUPPORTING MEMORANDUM** |

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

# TABLE OF CONTENTS

LR 7-1(a) CERTIFICATION ................................................................................. 1

MOTION ............................................................................................................. 1

SUPPORTING MEMORANDUM ........................................................................ 1

    I.   INTRODUCTION ...................................................................................... 1

    II.  STATEMENT OF MATERIAL UNDISPUTED FACTS ............................. 3

        A.  Richardson Informed NCU that She Was Pregnant. .................................. 5

        B.  NCU Fired Richardson Because She "Cohabitated" Outside of Marriage. ............... 8

    III. ARGUMENT AND AUTHORITY ............................................................ 11

        A.  Summary Judgment Standard. .................................................................. 11

        B.  NCU Engaged in Marital Status Discrimination as a Matter of Law. ...................... 11

           1.  Summary of the Law: Statutory Interpretation Under Oregon Law.................. 13

           2.  The Language in ORS 659A.030 Shows That the Legislature Intended to Protect Employees Who Decide to Marry or Not Marry. ............................................... 13

           3.  Other State Courts Have Held Their Marital Status Antidiscrimination Laws Protect Women Who Engage in Premarital Sex or Cohabitation...................... 14

           4.  This Court Should Interpret the Prohibition Against Marital Status Discrimination Similarly to How It Would Interpret the Prohibitions Against Discrimination of Other Protected Classes Enumerated in ORS 659A.030. ..... 18

           5.  Richardson's Position Is Consistent with the Purpose of ORS 659A.030 and Its Remedial Nature. ................................................................................ 20

           6.  BOLI Interprets the Prohibition Against Marital Status to Encompass Cohabitation Outside of Marriage. .................................................................. 21

        C.  NCU Engaged in Pregnancy Discrimination Under Title VII as a Matter of Law. . 23

        D.  NCU Engaged in Disparate Treatment Discrimination. ........................................... 24

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - i
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

1. NCU's Practice Is Facially Discriminatory. ....................................................... 24

2. A Religious Ban on Extramarital Relations, Applied Primarily Through Pregnancy, Violates Title VII Because It Constitutes Pretextual Disparate Treatment. ...................................................................................................... 26

E. NCU Engaged in Disparate Impact Because the School Applied a Religious Ban on Extramarital Relations Primarily Through Pregnancy. ........................................... 30

F. NCU Engaged in Pregnancy Discrimination Under ORS 659A.030 as a Matter of Law. ................................................................................................................................ 32

G. Religious Exemptions Do Not Save NCU from Its Discrimination. ........................ 33

IV. CONCLUSION ........................................................................................................... 34

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - ii
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................ 11
*Arifi v. FedEx Ground Package Sys., Inc.*, 2015 WL 4568685 (D. Or. July 28, 2015) ....... 33, 34
*Attorney Gen. v. Desilets*, 418 Mass. 316 (1994)..................................................... 15
*Automobile Workers v. Johnson Controls, Inc.*, 499 U.S. 187 (1991) ....................................... 25
*Berger v. DIRECTV, Inc.*, 2015 WL 1799996 (D. Or. Apr. 16, 2015) ..................................... 21
*Blachana, LLC v. Bureau of Labor & Indus.*, 354 Or. 676 (2014) ........................................... 22
*Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410 (6th Cir. 1996) ................................... 30
*Chipman v. Grant Cty. Sch. Dist.*, 30 F. Supp. 2d 975 (E.D. Ky. 1998)............................. 28, 31
*Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174 (10th
    Cir. 2000)........................................................................................ 13
*Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000)........................ 24, 26, 27, 28
*Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041 (9th Cir. 2007)........................................... 25
*Connecticut v. Teal*, 457 U.S. 440 (1982) ................................................................. 30
*Cty. of Dane v. Norman*, 174 Wis. 2d 683 (1993)....................................................... 18
*Dias v. Archdiocese of Cincinnati*, 2013 WL 360355 (S.D. Ohio Jan. 30, 2013).................... 28
*E.E.O.C. v. Catholic Healthcare W.*, 530 F. Supp. 2d 1096 (C.D. Cal. 2008)........................ 26
*EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272 (9th Cir. 1982) ................................ 33
*Ettner v. City of Medford*, 178 Or. App. 303 (2001) ................................................... 19
*Frank v. United Airlines, Inc.,* 216 F.3d 845 (9th Cir. 2000)................................................. 24
*French*, 460 N.W.2d at 6 ....................................................................................... 17
*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)......................................................... 30
*Hekker v. Sabre Constr. Co.*, 265 Or. 552 (1973) ....................................................... 20
*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S. Ct. 694 (2012) ...... 33
*Hutchinson v. McFarland Cascade Pole & Lumber Co.*, 2016 WL 3437601 (D. Or. June 20,
    2016)............................................................................................. 22
*In re Kelley's Estate*, 210 Or. 226 (1957) ................................................................ 21
*In re Matter of Wal-Mart Stores East, Inc.*, 22 BOLI 27 (2001) ....................................... 22, 23
*J. R. Simplot Co. v. Dep't of Agric.*, 340 Or. 188 (2006) .............................................. 22
*Markham v. Colonial Mortgage Serv. Co., Associates, Inc.*, 605 F.2d 566 (D.C. Cir. 1979)... 16,
    17
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................... 11
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)............................................... 26
*Millville Rescue Squad*, 225 N.J. at 390 ................................................................. 21
*Morrow v. Bard Access Sys., Inc.*, 833 F. Supp. 2d 1246 (D. Or. 2011).................................. 19
*N. Dakota Fair Hous. Council, Inc. v. Peterson*, 625 N.W.2d 551 (N.D. 2001) ...................... 17
*Neff v. Jackson Cty.*, 187 Or. App. 402 (2003) .......................................................... 21
*Pascoe v. Mentor Graphics Corp.*, 199 F. Supp. 2d 1034 (D. Or. 2001).................................. 32
*Peterson*, 625 N.W.2d at 562 ......................................................................... 17, 18
*PGE v. Bureau of Labor and Industries*, 317 Or. 606 (1993)............................................... 13
*Redhead v. Conference of Seventh-Day Adventists*, 440 F. Supp. 2d 211 (E.D.N.Y. 2006)...... 28

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - iii
(No. 6:15-cv-01886-AA)

HKM Employment Attorneys LLP
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

*Reidt v. County of Trempealeau*, 975 F.2d 1336 (7th Cir. 1992) ............................................... 24
*Seitz v. State By & Through Albina Human Res. Ctr.*, 100 Or. App. 665 (1990) ..................... 19
*Smith v. Fair Employment & Hous. Com.*, 12 Cal. 4th 1143 (1996) ......................................... 16
*Smith v. Millville Rescue Squad*, 225 N.J. 373 (2016) .............................................................. 16
*Springfield Educ. Ass'n v. Springfield Sch. Dist. No. 19*, 290 Or. 217 (1980) .......................... 21
*State by Cooper v. French*, 460 N.W.2d 2 (Minn. 1990) ..................................................... 17, 18
*State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844 (Minn. 1985) .................... 17
*Sticka v. Casserino*, 290 B.R. 735 (9th Cir. BAP 2003) .......................................................... 13
*Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274 (Alaska 1994) ..................... 15, 16
*Vigars v. Valley Christian Ctr. of Dublin, Cal.*, 805 F. Supp. 802 (N.D. Cal. 1992) .......... 25, 28
*Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988) ....................................................... 30
*Winnett v. City of Portland*, 118 Or. .App. 437 (1993) ............................................................. 19
*Wright v. Wimberly*, 94 Or. 1 (1919) ........................................................................................ 21

**Statutes**

42 U.S.C. § 2000e-1(a) ........................................................................................................ passim
Fed. R. Civ. P. 56 ........................................................................................................................ 1
ORS 659A ................................................................................................................................ 13
ORS 659A.003 ........................................................................................................................ 20
ORS 659A.006 ........................................................................................................................ 33
ORS 659A.029 ........................................................................................................................ 32
ORS 659A.030 ................................................................................................................... passim

**Other Authorities**

www.pewsocialtrends.org/2014/09/24/record-share-of-americans-have-never-married/ .......... 20

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - iv
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

## LR 7-1(a) CERTIFICATION

In compliance with LR 7-1(a), counsel for Plaintiff Coty Richardson conferred with counsel for Defendant Northwest Christian University ("NCU") via telephone conference in a good-faith effort to resolve the disputes presented by this motion, but the parties were unable to do so.

## MOTION

Plaintiff Coty Richardson, in her Second Amended Complaint (Dkt. 21), brought twelve separate claims against NCU. Pursuant to Fed. R. Civ. P. 56, Richardson now moves this Court for summary judgment on five of those claims:

**Claim 1** (pregnancy discrimination under Oregon law);

**Claim 2** (sex/gender discrimination under Oregon law);

**Claim 3** (marital status discrimination under Oregon law);

**Claim 10** (pregnancy discrimination under federal law); and

**Claim 11** (sex/gender discrimination under federal law).

## SUPPORTING MEMORANDUM

## I.     INTRODUCTION

Plaintiff Coty Richardson was an exercise science professor at Northwest Christian University. By all accounts, and even by NCU's own admission, her performance was superlative. She received fantastic evaluations, consistent praise, and several promotions. Indeed, just a few weeks prior to her termination, she received a raise.

Richardson lives in Eugene, Oregon. Her boyfriend — a man she has dated on and off for the past several years — lives in Washington state. In April 2015, she found out that she

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 1
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

was pregnant, and she informed the University so that she could plan her maternity leave with minimal impact on NCU. Upon learning that Richardson had become pregnant, the University fired her. NCU did not fire her because of concerns over her performance. NCU did not fire her because of her teaching standards, because of any alleged inappropriate conduct at work, or because of a lack of effort on her part. NCU fired her because she had engaged in sexual intercourse outside of marriage, and her pregnancy would demonstrate that she had engaged in this act. As a matter of law, this constitutes marital status discrimination and pregnancy/sex discrimination.

Oregon prohibits marital status discrimination in the workplace. Here, if Richardson were married to her boyfriend, NCU would have had no problem with her getting pregnant. Indeed, under the facts of this case, if Richardson had married her boyfriend even after informing NCU about her pregnancy, she would still have a job. Put succinctly, if she had married her boyfriend, she would have retained her job; if she did not, she would be fired. This is, by law, marital status discrimination.

Federal and state laws prohibit pregnancy and sex discrimination. NCU's actions violate Title VII and ORS 659A.030 because the school has a practice of firing (or requiring marriage from) unwed pregnant women but does not apply the same standard to unwed non-pregnant women or to men. In addition, a prohibition on extra-marital relations, applied primarily through evidence of pregnancy, violates state and federal law. Here, NCU relies on three ways to find out whether an NCU employee engages in premarital sex: self-disclosure, gossip, *and pregnancy of an unmarried woman*. But only women can get pregnant, and NCU does not engage in *any* efforts to find out whether men have engaged in premarital sex, or even

whether women who are not pregnant engaged in premarital sex. For this reason, using pregnancy as a key source of evidence of premarital sex violates both federal and state laws on pregnancy and sex discrimination as a matter of law.

Plaintiff Richardson respectfully asks this Court to grant partial summary judgment and hold, as a matter of law, that NCU's actions in this case constitute marital status discrimination under Oregon law, and sex/pregnancy discrimination under Oregon and federal law.

## II.     STATEMENT OF MATERIAL UNDISPUTED FACTS

In August 2011, Coty Richardson was hired on to the faculty of NCU as an instructor of exercise science. (Declaration of Daniel Kalish ("Kalish Decl.") ¶ 5, Ex. D, Deposition of Dr. Heike McNeil ("McNeil Dep.") at 36:23–38:12.)[1] Richardson had submitted her curriculum vitae in consideration for a position at the University, and when NCU authorized the addition of a full-time instructor in the exercise science program, NCU reached out to Richardson. (McNeil Dep. at 36:23–38:12; Kalish Decl. ¶ 6, Ex. E, Deposition of Coty Richardson ("Richardson Dep.") 89:3–11.) She went through several rounds of interviews beginning with the program supervisor, Dr. Heike McNeil, then with the Vice President of Academic Affairs and Dean of Faculty Dr. Dennis Lindsay, and finally with the President of the University Dr. Joseph Womack. (Richardson Dep. at 89:3–97:24.) Richardson's energy and passion for her career were evident from the moment she interviewed with NCU. (Kalish Decl. ¶ 7, Ex. F, Deposition of Joseph Womack ("Womack Dep.") at 116:4–117:17.)

---

[1] Excerpts of deposition transcripts are attached as exhibits to the supporting Declaration of Daniel Kalish. The excerpts of deposition testimony will be referenced by the deponent's last name.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 3
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

During the time Richardson interviewed for her job at NCU, she was a single mother

raising two children, and both of her daughters lived at home with her.  (Richardson Dep. at

25:16–26:11.)  During the interview process, the topic of her children came up on occasion, and

Richardson talked about them openly but never disclosed her marital status.  (Richardson Dep.

at 94:11–95:11.)  NCU assumed that Richardson was not married because "she never talked

about a husband."  (McNeil Dep. at 12:4–13.)

Richardson was enthusiastic and passionate about the exercise science program at NCU.

(Womack Dep. at 121:8–11; 122:8–11.)  Her educational background in movement sciences

gave her the right foundation for the position, and she was considered accomplished and very

knowledgeable in her field.  (McNeil Dep. at 36:23–38:12.)  Following her initial interviews,

the hiring committee unanimously recommended Richardson for employment, and she was

endorsed by Lindsay and Womack as a good fit for the University.  (Womack Dep. at 120:9–

20.)

By all accounts, Richardson excelled at her job.  She consistently received excellent

reviews from her students at NCU.  (Kalish Decl. ¶ 8, Ex. G, Deposition of Dr. Dennis Lindsay

("Lindsay Dep.) at 62:9–20.)  During her annual performance reviews conducted by the Faculty

Review Panel Richardson received nothing but positive marks.  (NCU 45–46[2]; Lindsay Dep. at

36:8–24.)  The University was very satisfied with her performance as an instructor and praised

her hard work and expertise as making "an enormous difference in the Exercise Science

_____

[2] Documents in support of Plaintiff's motion for partial summary judgment are also attached as exhibits to the supporting Declaration of Daniel Kalish.  For clarity, the documents are referenced herein by Bates number (*e.g.*, "NCU ___") and can be found in numerical Bates order as Exhibit A to the Kalish Decl. ¶ 2.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 4
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

program" citing it as one of the "school's healthiest programs." (NCU 45–46.) Richardson believed in NCU and thoroughly enjoyed her job and the students she taught. (Richardson Dep. at 91:15–21, 99:2–22, 177:14–17.)

NCU recognizes four faculty ranks, which include instructor, assistant professor, associate professor, and full faculty. (Womack Dep. at 108:24–109:9.) Following Richardson's third year as an instructor at NCU, she was highly regarded by the faculty and her students. (Lindsay Dep. at 59:6–60:9.) In January 2015, the Faculty Review Panel met with Richardson again to review her performance. (NCU 43–44.) On April 24, 2015, the panel wrote to Richardson that they were "extremely grateful to have you as a colleague here at NCU and we value your expertise and your contribution to the mission of NCU." (NCU 43.) The University was so pleased with her performance that they offered her a promotion to the rank of assistant professor to begin on August 15, 2015. (NCU 43-44; Lindsay Dep. at 59:6–60:9, 62:9–20.) Richardson accepted the promotion and signed a new continuing contract in March 2015 for the position of Assistant Professor of Exercise Science. (NCU 22.)

A.     **Richardson Informed NCU that She Was Pregnant.**

Following her promotion in April 2015, Richardson found out that she was pregnant. (Richardson Dep. at 15:19–21.) On May 21, 2015, she sent an email to her supervisor, McNeil, and to Lindsay, informing NCU that she was expecting her third child during the upcoming academic year. (NCU 2; Lindsay Dep. at 63:9–64:25.) Richardson's due date was November 26, 2015, so she needed to coordinate teaching coverage for her classes during a two-week period prior to the course finals during which she anticipated being on leave in order to give birth. (NCU 2; McNeil Dep. at 6:13–23.) There was not a single issue of concern with

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 5
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

Richardson's job performance or work at NCU until she informed the University that she was pregnant. (Womack Dep. at 124:25–125:11; Lindsay Dep. at 189:1–18.)

At the time Richardson disclosed her pregnancy, NCU did not know Richardson's marital status. (Lindsay Dep. at 87:11–88:11.) NCU is not aware of any instance in which Richardson ever conveyed her marital status to anyone at the University except perhaps on employment forms when she was hired in 2011. (Womack Dep. at 179:10–12, 180:2–5; Lindsay Dep. at 66:6–67:24, 150:13–152:6, 152:24–153:18, 167:21–168:8.) When a married professor at NCU becomes pregnant, the University treats it as a cause for celebration and often hosts a baby shower for the professor. (Lindsay Dep. at 161:16–19; Kalish Dec. ¶ 9, Ex. H, Deposition of Gene De Young ("De Young Dep.") at 36:23–38:12.) Had Richardson been married at the time she became pregnant, NCU would have been happy for her and congratulated her on her pregnancy. (Lindsay Dep. at 71:1-5, 73:6–18.) Instead, the University treated Richardson's pregnancy differently from expectant mothers who are married. (De Young Dep. at 42:18–21.) NCU referred to Richardson's pregnancy as a "situation" that required investigation into her marital status to determine whether she was married or single. (De Young Dep. at 41:10–42:21.)

The University convened the top three men at NCU — President James Womack, Vice President for Academic Affairs and Dean of Faculty Dennis Lindsay, and Vice President for Finance and Administration Gene De Young — as stewards to deal with Richardson's pregnancy, determine whether she was married or single, and ultimately terminate her for engaging in sexual relations outside of wedlock. (Lindsay Dep. at 58:3–23; De Young Dep. at 66:22–68:21, 71:3–6.) First, NCU deployed McNeil, Richardson's female supervisor, to

investigate her marital status by meeting with Richardson over coffee to discuss her pregnancy and inquire about her marital status in relation to her pregnancy. (Lindsay Dep. at 89:6–24; McNeil Dep. at 10:24–11:9, 14:4–15:2.) Then McNeil reported back to Lindsay what she had learned from her meeting with Richardson, which was in turn conveyed to the other stewards. (Lindsay Dep. at 90:8–91:4.)

Richardson was called to meet next with Lindsay regarding her pregnancy. (NCU 1.) In the meeting with Lindsay and McNeil, on June 24, 2015, Lindsay asked Richardson directly whether she was married. (McNeil Dep. at 19:13–15, 23:22–24:4.) After questioning by Lindsay about Richardson's marital status, NCU learned that Richardson had been in a long-term committed relationship with the father of her child, but they were not married. (Lindsay Dep. at 75:25–76:25.) During Lindsay's questioning about Richardson's marital status and about her sexual relationship with the father of her unborn child, he probed about her "immediate plans" to marry her partner. (Lindsay Dep. at 104:8–23.) Richardson's marital status was conveyed to Womack and De Young. (De Young Dep. at 43:20–23.) After learning that Richardson was in a committed relationship but unmarried, NCU bristled at the fact that Richardson had engaged in sexual behavior while she was not married. (Womack Dep. at 160:13–161:12.)

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 7
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

**B.      NCU Fired Richardson Because She "Cohabitated"[3] Outside of Marriage.**

Following Richardson's meeting with Lindsay and McNeil, she was given two options

in order to keep her job at NCU. (Lindsay Dep. at 109:1–13; De Young Dep. at 50:5–56:6.)

Richardson could either (1) marry the father of her child prior to August 1, 2015 and present

proof of their union, or (2) in the alternative, she had to disassociate from the father of her child

and declare her conduct a mistake. (Lindsay Dep. at 77:1–78:12, 80:13–81:14, 109:1–13,

112:17–113:14, 141:5–145:9, 169:5–170:9, 236:8–238:16.) The options given to Richardson

were created by Lindsay. (De Young Dep. at 70:22–24.)

Only five days later, Lindsay began to call Richardson at home to push her for a

decision as to whether she would marry the father, disassociate from him, or lose her job at

NCU. (NCU 6.) In response, Richardson sent an e-mail to Lindsay requesting privacy in her

personal life and in matters regarding her "marriage, the health of my sexuality, my

reproduction, and personal choices . . . ." (NCU 4-5.) Instead, NCU convened Womack,

Lindsay, and De Young and wrote letters to Richardson (even an "Aide Memoire")

documenting their demands and efforts to terminate her employment. (NCU 3, 7, 8–9.) NCU

wrote that Richardson's "pregnancy outside of marriage and cohabitation with the father is

incompatible with NCU's missions and goals." (NCU 7.) The University instructed that "in

---

[3] NCU states that the reason for terminating Coty Richardson was because she engaged in premarital sex or because she continued to cohabitate outside of marriage. Despite NCU's inconsistent use of the phrase "cohabitation," the three men who directed Richardson's termination are now relatively certain that their use of the word "cohabitation" was meant to convey engaging in sexual relations outside the bounds of marriage, or pre-marital sex. (De Young Dep. at 51:16–54:8; Womack Dep. at 34:19–35:5; Lindsay Dep. at 23:4–23, 25:13–26:6.) Accordingly, for purposes of this motion, engaging in premarital sex and/or cohabitation outside of marriage will be used interchangeably.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 8
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

order to continue your employment, you must conform your lifestyle to reflect the faith based perspective of NCU." (NCU 7.) On July 6, 2015, NCU demanded that within seven days Richardson inform the University whether she intended to marry her partner or disassociate from him and proceed solo with her pregnancy. (NCU 5, 7.)

Richardson and her partner have had intentions of getting married. (Richardson Dep. at 187:13–16.) With Richardson's position at NCU, finishing her Ph.D., and being pregnant, she did not feel that she could comply with NCU's demand that she immediately marry. (Richardson Dep. at 188:10–189:4.) Richardson discussed NCU's ultimatum with her partner and family and decided that it was not financially feasible or practical for Richardson and her partner to marry immediately. (Richardson Dep. at 190:4–191:5.) Her partner lived in Washington, Richardson had a job, home, and mortgage in Oregon, and her children were in school, which all presented real obstacles to complying with NCU's demands. (Richardson Dep. at 191:3–13.) Richardson's hope was that NCU would treat her professionally and respect her personal life. (Richardson Dep. at 185:23–191:25.)

Had Richardson not been pregnant, NCU would have had no way of knowing whether she had engaged in sex outside of marriage. (De Young Dep. at 56:7–57:8.) NCU does not track employee marital status in any way, nor does it monitor whether employees are engaging or had engaged in sexual relations. (Womack Dep. at 215:16–216:8); Kalish Decl. ¶ 4, Ex. B, Defendant's Response to Plaintiff's First Set of Interrogatories, Responses 6–8). Rather, NCU simply waits to hear gossip, or for an employee to self-report, or will take action when the stewards see or hear of evidence of pregnancy. (Womack Dep. at 217:5–13; Lindsay Dep. at 124:13–125:10.)

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 9
(No. 6:15-cv-01886-AA)

HKM Employment Attorneys LLP
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

With Richardson, NCU was concerned that her pregnancy would begin to show and "become obvious to all," and that people would draw the conclusion that Richardson had engaged in premarital sex. (Lindsay Dep. at 160:1–164:15, 168:9–24; NCU 7.) NCU viewed Richardson's pregnancy as something that she was not going to be able to hide. (Lindsay Dep. at 70:15–25.) If Richardson had not disclosed her pregnancy, but instead had continued on with her job, NCU would have inquired about her marital status when her pregnancy began to show. (Lindsay Dep. at 71:1–72:15.)

NCU maintains an antidiscrimination policy titled "Harassment and Discrimination-Free Workplace" that is well-documented in its employee handbooks in order to "promote a healthy workplace."[4] (NCU 570; De Young Dep. at 20:17–22:2; Lindsay Dep. at 195:9–196:4.) NCU is unequivocal in its understanding that it must follow the law to ensure that the University does not discriminate against any employee on the basis of any protected class.[5] (Womack Dep. at 85:2–6, 87:15–18.) Despite NCU's understanding, the University is clear that had Richardson been married at the time she got pregnant, she would still be employed at NCU. (Womack Dep. at 218:24–219:3.) Additionally, had Richardson married the father of her expected child by NCU's deadline, the University would not have fired her. (Lindsay Dep.

---

[4] Faculty at NCU are expected to adhere to their contract, faculty handbook, and employee handbook. (Womack Dep. at 44:1–11.) There is no language in any policy at NCU that states it is against NCU policy for employees to engage in sexual relations outside marriage. (Lindsay Dep. at 94:9–15.) In fact, the University's written fraternization policy conveys a tolerance of sexual relations with unmarried partners. (NCU 374; Lindsay Dep. at 96:18–99:12.)

[5] Lindsay is also unequivocal that NCU *does* discriminate against individuals on the basis of a protected class (sexual orientation) and would violate the law and its own anti-discrimination policy. (Lindsay Dep. at 195:4–8.)

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 10
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

at 105:8–108:24, 198:4–199:15; De Young Dep. at 51:6–9.)  Instead, when Richardson did not

agree to marry her partner prior to August 1, 2015, and did not agree to disassociate from the

father of her child, NCU sent Richardson a letter terminating her employment for engaging in

premarital sex.  (Lindsay Dep. at 173:11–174:3; NCU 9.)

Richardson's termination letter was clear, "sexual relations outside of marriage is

contrary to the University's core values"; "you are a single mother and your pregnancy would

result in a very demonstrative violation of that core value"; as a result, "your employment with

NCU is now at an end."  (NCU 9.)

## III.     ARGUMENT AND AUTHORITY

### A.     Summary Judgment Standard.

Summary judgment is appropriate if the pleadings, depositions, and other documents on

file show that there is no genuine issue as to any material fact.  *Anderson v. Liberty Lobby, Inc*.,

477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  If the movant shows that no

genuine issue exists for trial, the nonmovant cannot then rest on the pleadings but must respond

with evidence setting "forth specific facts showing that there is a genuine issue for trial."  *Id*. at

250.  When the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

### B.     NCU Engaged in Marital Status Discrimination as a Matter of Law.

Federal law does not prohibit an employer from discriminating against an employee as a

result of marital status.  Further, most states do not prohibit marital status discrimination.  But

Oregon, along with roughly twenty other states, prohibits marital status discrimination in

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 11
(No.  6:15-cv-01886-AA)

HKM Employment Attorneys LLP
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

employment, housing, or both. *See, e.g.*, ORS 659A.030(1)(a) (prohibiting marital status discrimination in employment).

Here, Richardson was fired because she engaged in unmarried sex and/or cohabitated outside of marriage. NCU concedes that Richardson would not have been terminated if she had engaged in *married* sex or *married* cohabitation. The question, then, for this Court is whether firing an employee because she engaged in unmarried sex or cohabitation violates Oregon's prohibition against marital status discrimination in the workplace. If the answer is "yes," then Richardson prevails as a matter of law. If the answer is "no," then Richardson concedes that she cannot proceed on this claim as a matter of law. This is a legal issue and, therefore, appropriate for summary judgment.

Based on Plaintiff's research, no Oregon state or federal court has ever interpreted the marital status antidiscrimination law in ORS 659A.030. The other states that have addressed this question — whether their respective state marital status discrimination laws preclude an employer or landlord from firing an employee or refusing to rent to a tenant because of premarital sex — are split (discussed further below).

That being said, several reasons exist why this Court should follow the reasoning of the Supreme Courts of California, Massachusetts, Alaska, and New Jersey, and the United States Court of Appeals for the District of Columbia, and conclude that an employer violates a marital status anti-discrimination law when it discriminates against an individual for engaging in premarital sex or cohabitating outside of marriage. Indeed, Richardson's position is supported by (1) the language of ORS 659A.030; (2) the persuasive decisions of other state courts on this issue; (3) how courts apply ORS 659A.030 to other protected classes; (4) the purpose of ORS

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 12
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

659A.030; and (5) the interpretation of "marital status" by the Oregon Bureau of Labor and Industries ("BOLI"), the agency charged with enforcing the marital status anti-discrimination prohibition at issue here.[6]

### 1. Summary of the Law: Statutory Interpretation Under Oregon Law.

In determining the meaning of "marital status," this Court applies the Oregon method of statutory construction. *Sticka v. Casserino*, 290 B.R. 735, 737, 739–40 (9th Cir. BAP 2003) (scope of Oregon state law exemption involves construction of state law using Oregon policy); *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1190 (10th Cir. 2000) (applying Colorado rules of statutory construction to Colorado statute). In Oregon, courts look to language and context of the statute to determine the legislature's intent and then if further inquiry is necessary, consider other factors, such as legislative history or general maxims of statutory construction. *PGE v. Bureau of Labor and Industries*, 317 Or. 606, 610–12, 859 P.2d 1143 (1993).[7]

### 2. The Language in ORS 659A.030 Shows That the Legislature Intended to Protect Employees Who Decide to Marry or Not Marry.

Although ORS 659A does not define "marital status," the language of the statute is clear. The statute prohibits discrimination on the basis of "marital status." ORS 659A.030(1)(a). Here, Richardson was terminated because she engaged in unmarried sex with

---

[6] Marital status discrimination comes up in several contexts. For example, does a prohibition of marital status discrimination prevent anti-nepotism policies, or firing someone as a result of a spouse's identity or a spouse's conduct? Each context has separate considerations, and this Court does not have to answer all these questions in this case.

[7] Plaintiff has looked at the legislative history, but did not find it illuminating one way or the other.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 13
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

her boyfriend. But if she were married to him, she would not have been fired. The only difference is her marital status — that is, the status of her being married (at which point sex with her boyfriend would not lead to her termination) or not being married (at which point sex with him would lead to her termination). Or stated another way, NCU told her that if she married her boyfriend, she could retain her position. If she did not marry her boyfriend, she could not retain her position. This is discrimination based on her marital status because it is based on the status of her being married or unmarried to her boyfriend. Based on this reason alone, this Court should conclude that the Oregon law prohibits the action taken by NCU here.

### 3. Other State Courts Have Held Their Marital Status Antidiscrimination Laws Protect Women Who Engage in Premarital Sex or Cohabitation.

No Oregon court has decided whether "marital status" discrimination precludes discrimination against cohabitating adults outside of marriage. But courts in other states — examining similar prohibitions against marital status discrimination — have considered this issue, and an analysis of these cases is helpful.

Richardson concedes that other states that have defined "marital status" have split as to whether marital status discrimination statutes prohibit an employer from discriminating against a woman cohabitating or having sexual relationships outside of marriage.[8] This Court, however, should follow the reasoning of the courts that concluded that marital status discrimination statutes protect individuals who cohabitate or have sexual relations outside of marriage.

---

[8] These cases often occur in the housing context, where state statutes also forbid housing discrimination based on marital status.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 14
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

In *Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274, 278 (Alaska 1994), for example, a landlord refused to rent to unmarried couples based on the landlord's religious belief that cohabitation outside of marriage was sinful. The Alaska Supreme Court held that this refusal violated the Alaska statute prohibiting landlords from discriminating based on "marital status." *Id.* The court held that, based on the clear statutory language, refusing to rent to a couple after learning that they were not married was, by definition, marital status discrimination. *Id.*

In *Swanner*, the defendants in that case argued that they were not discriminating on the basis of marital status, but instead were discriminating based on the tenants' conduct — that is, engaging in premarital sex. *Swanner*, 874 P.2d at 287 n.4. The Alaska Supreme Court rejected this reasoning out of hand, noting that "Swanner cannot reasonably claim that he does not rent or show property to cohabitating couples based on their conduct (living together outside of marriage) and not their marital status, when their marital status (unmarried) is what makes their conduct immoral in his opinion." *Id.*

The Massachusetts Supreme Court reached a similar conclusion in *Attorney Gen. v. Desilets*, 418 Mass. 316, 636 N.E.2d 233 (1994). There, the court also held that landlords who refused to rent to cohabitating adults violated the prohibition against marital status discrimination. Like the defendants in *Swanner*, these defendants also contended that they were "not discriminating on the basis of marital status but rather on the basis of conduct and that consequently they are not discriminating in a way forbidden" by the marital status prohibition. *Id.* at 320. And like the *Swanner* court, the Massachusetts Supreme Court also rejected this argument, noting that the "analysis of the defendants' concerns shows that it is

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 15
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

marital status and not sexual intercourse that lies at the heart of the defendants' objection." *Id.* The court went on to note that "if married couple A wanted to cohabit in an apartment owned by the defendants, they would have no objection. If unmarried couple B wanted to cohabit in an apartment owned by the defendants, they would have great objection. The controlling and discriminating difference between the two situations is the difference in the marital status of the two couples." *Id.*

Other courts have reached similar conclusions. In *Smith v. Fair Employment & Hous. Com.*, 12 Cal. 4th 1143, 1151, 913 P.2d 909 (1996), the California Supreme Court held that a landlord who refused to rent to unmarried couples because she believed it was "a sin for her to rent her units to people who will engage in nonmarital sex on her property" violated the prohibition against marital status in housing. And just a few months ago, the New Jersey Supreme Court concluded that firing an employee because he was in the process of getting a divorce constitutes marital status discrimination. *Smith v. Millville Rescue Squad*, 225 N.J. 373, 379, 139 A.3d 1 (2016).

And the federal D.C. Circuit Court also held that the marital status anti-discrimination law prohibits discrimination based on premarital cohabitation in *Markham v. Colonial Mortgage Serv. Co., Associates, Inc.*, 605 F.2d 566, 567 (D.C. Cir. 1979). At issue was the Equal Credit Opportunity Act, which prohibits creditors from discriminating against applicants on the basis of marital status. There, after noting that the "language is simple, and its meaning is not difficult to comprehend," the court held that the marital status prohibition "prevents creditors from refusing to aggregate the incomes of unmarried joint mortgage applicants when determining creditworthiness when the company would aggregate the incomes of two married

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 16
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

joint mortgage applicants." *Id*. at 568.

This Court should follow the reasoning of *Swanner*, *Desilets*, *Smith*, *Millville Rescue Squad*, and *Markham* and conclude that marital status antidiscrimination laws make it illegal to discriminate based on unmarried sex or unmarried cohabitation. As in those cases, the language and meaning of ORS 659A.030 is clear. And like the arguments raised by defendants in those cases, a conduct-versus-status distinction makes little sense. Put simply, the issue here — as in those cases — is that Richardson would still have a job if she had *married* her boyfriend. But she decided not to *marry* him, and she was fired. The distinction was whether she was married, and that is marital status discrimination.

And although some other state courts have held that their state marital status anti-discrimination laws do not protect cohabitating adults, there were important factors relied on by those courts that do not exist here. For example, in *State by Cooper v. French*, 460 N.W.2d 2, 6 (Minn. 1990)[9] and *N. Dakota Fair Hous. Council, Inc. v. Peterson*, 625 N.W.2d 551, 562 (N.D. 2001), the courts concluded that the states' marital status antidiscrimination laws did not protect cohabitating unmarried adults in housing primarily because Minnesota and North Dakota had criminal statutes that prohibited unmarried sex or unmarried cohabitation. Those courts reasoned that it would make no sense for the state legislature to protect cohabitating unmarried adults in employment or housing while at the same time making it criminally illegal. *French*, 460 N.W.2d at 6; *Peterson*, 625 N.W.2d at 562. But Oregon has no similar statute

---

[9] Minnesota law, however, is confusing on this issue. In *State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 847 (Minn. 1985), the Minnesota Supreme Court appeared to hold that questions to applicants about premarital sex did constitute marital status discrimination.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 17
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

criminalizing premarital sex or premarital cohabitation. *See Smith*, 12 Cal. 4th at 1159

(distinguishing *State by Cooper v. French* because the California Supreme Court did not have

to "labor under the same burden" as other courts that have to "reconcil[e] statutes barring

discrimination because of 'marital status' with other statutes that criminalize private sexual

conduct between consenting adults").

Another court invalidated a county housing ordinance that prohibited marital status

discrimination because of the particular state's strong policy — clearly spelled out by state

statute — of promoting marriage. *Cty. of Dane v. Norman*, 174 Wis. 2d 683, 689, 497 N.W.2d

714 (1993). But Oregon does not have the same clearly enumerated public policy, and the

court does not have the same power to invalidate a statute. And another court deferred to the

state agency's interpretation that the marital status antidiscrimination law did *not* protect

premarital cohabitation. *Peterson*, 625 N.W.2d at 562. But the Oregon Bureau of Labor and

Industries has interpreted Oregon's marital status antidiscrimination law to *protect* women like

Coty Richardson (see below).

> **4.      This Court Should Interpret the Prohibition Against Marital Status
> Discrimination Similarly to How It Would Interpret the Prohibitions
> Against Discrimination of Other Protected Classes Enumerated in
> ORS 659A.030.**

As Richardson understands it, NCU's position is that firing her does not violate marital

status anti-discrimination law because NCU does not discriminate against *all* unmarried

individuals, but only a *subset* of unmarried individuals — those who are (1) unmarried and (2)

have sex.

But NCU's interpretation is counter to how courts interpret the antidiscrimination

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 18
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

prohibitions against the other protected classes enumerated in ORS 659A.030 (*e.g.*, those defined by race, color, national origin, sexual orientation). In other words, NCU's reasoning would never apply for race. The courts would never countenance an employer's policy that said it would fire all employees who are (1) black and (2) have sex. Or who are (1) women and (2) have sex. Or who are (1) gay and (2) have sex. But NCU asks this Court to interpret ORS 659A.030 for marital status differently from the way it extends that statute to every other protected status. This Court should reject NCU's interpretation.

Further, the fact that the Oregon legislature added "marital status" to an existing statute, ORS 659A.030, with a specific case history and application shows that the legislature intended that marital status be applied in the same manner as the other prohibited classifications. And for the other prohibited factors. in ORS 659A.030, the courts consider whether the protected status was merely a "substantial factor" in the decision to terminate. *See, e.g.*, *Ettner v. City of Medford*, 178 Or. App. 303, 35 P.3d 1140 (2001) (gender); *Winnett v. City of Portland*, 118 Or. .App. 437, 847 P.2d 902 (1993) (sex); *Seitz v. State By & Through Albina Human Res. Ctr.*, 100 Or. App. 665, 675, 788 P.2d 1004 (1990) (sex and race); and *Morrow v. Bard Access Sys., Inc.*, 833 F. Supp. 2d 1246, 1248-49 (D. Or. 2011) (age). Indeed, in *Morrow*, the court specifically applied the "substantial factor" test for age discrimination under ORS 659A.030 as opposed to the "but for" test used in federal age discrimination law because the "'substantial factor' test applied to other forms of discrimination prohibited by [ORS 659A.030]." *Morrow*, 833 F. Supp. 2d at 1248. For the same reason, this Court should apply the marital status prohibition in the same way it interprets the prohibitions against every other protected class listed in ORS 659A.030. Since there is little doubt that Richardson's marital status was a

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 19
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

substantial factor (and even a "but for" factor) in her termination, NCU's termination of her is illegal marital status discrimination as a matter of law.

### 5. Richardson's Position Is Consistent with the Purpose of ORS 659A.030 and Its Remedial Nature.

Further, Richardson's position is consistent with the purpose of the Oregon discrimination act to remove "arbitrary standards," to "ensure the human dignity of all people within this state and protect their health, safety, and morals from the consequences of intergroup hostility, tensions, and practices." ORS 659A.003. Here, to remain consistent with this purpose, marital status discrimination must apply to Richardson's situation. Like other forms of discrimination, marital status discrimination is based on assumptions and stereotypes, often about whether the person is committed, stable, or even moral, and has nothing to do with an employee's actual performance at work. Deciding to marry, and when, and to whom are some of the most intimate decisions that an individual can make, and allowing NCU to discriminate on this exact criterion would contravene the intent of the Oregon civil rights statute. Protecting this right is especially important as more and more individuals are choosing not to marry. *See, e.g.*, www.pewsocialtrends.org/2014/09/24/record-share-of-americans-have-never-married/.[10]

Richardson's interpretation of marital status discrimination is also consistent with the remedial purpose of ORS 659A.030. Remedial statutes should be construed liberally. *Hekker v. Sabre Constr. Co.*, 265 Or. 552, 558, 510 P.2d 347 (1973) (interpreting attorney fee statute

---

[10] The article further shows that marital status discrimination has a disproportionate effect on blacks and Hispanics, two minority groups that tend to get married less often than others.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 20
(No. 6:15-cv-01886-AA)

HKM Employment Attorneys LLP
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

broadly to reflect remedial purpose); *In re Kelley's Estate*, 210 Or. 226, 238, 310 P.2d 328

(1957) (noting the "general rule that remedial statutes should be given a liberal construction");

*Berger v. DIRECTV, Inc.*, 2015 WL 1799996, at *4 (D. Or. Apr. 16, 2015) (holding that statute

must "be given an expansive interpretation in order to effectuate the [statute's] broad remedial

purpose"). *Wright v. Wimberly*, 94 Or. 1, 12, 184 P. 740 (1919) ("It is also true that enactments

for the redress of existing grievances and for the protection of rights are known as 'remedial,'

and as such should be liberally interpreted"). Here, the Oregon antidiscrimination statute, ORS

659A.030, is a remedial statute and thus should be interpreted broadly. *Neff v. Jackson Cty.*,

187 Or. App. 402, 408, 67 P.3d 977 (2003) (noting "remedial" nature of the Oregon anti-

discrimination laws); *see also Millville Rescue Squad*, 225 N.J. at 390 (interpreting marital

status prohibition broadly to reflect remedial purpose of statute).

###### 6. BOLI Interprets the Prohibition Against Marital Status to Encompass Cohabitation Outside of Marriage.

Further, Richardson's interpretation — that the marital status anti-discrimination law

protects those who engage in unmarried sex or unmarried cohabitation — is consistent with

how the Oregon Bureau of Labor and Industries ("BOLI"), the agency charged with

administering and enforcing the marital status statutory provision, has interpreted the marital

status clause. In this context, since marital status is likely an "inexact term,"[11] the court does

---

[11] When an agency's statutory interpretation is at issue, the court's standard of review depends on whether the disputed statutory term is an exact term, an inexact term, or a delegative term. *Springfield Educ. Ass'n v. Springfield Sch. Dist. No. 19*, 290 Or. 217, 224, 621 P.2d 547 (1980). While inexact terms embody a "complete expression of legislative meaning," that meaning may not always be obvious. Id. With respect to "inexact terms," the agency, and ultimately the court, must determine what the legislature intended by using those words. *Id.*

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 21
(No. 6:15-cv-01886-AA)

HKM Employment Attorneys LLP
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

not necessarily give deference to the agency's interpretation per se. *Blachana, LLC v. Bureau of Labor & Indus.*, 354 Or. 676, 687, 318 P.3d 735 (2014). A court reviews an agency's interpretation of an inexact term "to determine whether the agency's action effectuated the legislative policy, as evidenced by the text and context of the statute." *J. R. Simplot Co. v. Dep't of Agric.*, 340 Or. 188, 197–98, 131 P.3d 162 (2006). But this Court can consider BOLI's interpretation of marital status for its persuasiveness, and also give it the weight that it deserves. *Hutchinson v. McFarland Cascade Pole & Lumber Co.*, 2016 WL 3437601, at *3 (D. Or. June 20, 2016) (holding that BOLI's interpretation of a statute "may be given an appropriate degree of assumptive validity if the agency was involved in the legislative process or if [the court] infer[s] that [the agency] has expertise based upon qualifications of its personnel or because of its experience in the application of the statute to varying facts") (internal citations omitted).

Although BOLI has not issued a rule that clarifies the meaning of "marital status," in *In re Matter of Wal-Mart Stores East, Inc.*, 22 BOLI 27 (2001) (attached as Exhibit C to Kalish Decl. ¶ 4). BOLI took the position that harassing an employee based on the fact that the employee was married but dating a different co-employee constituted marital status discrimination under ORS 659A.030. There, the plaintiff was separated from her husband and started to date her co-employee during this separation. Other employees harassed the plaintiff and subjected her to verbal abuse due to the fact that she was married but dating another co-employee (essentially, committing adultery). The case made clear that she would not have been harassed if she were either (1) married to her co-employee, or (2) no longer married to her husband. The harassment was directly tied to her actions and her marital status. *Id*. at 32–40.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 22
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

BOLI filed suit on her behalf and alleged that harassment against her as a result of her alleged adultery constituted marital status discrimination. *In re Matter of Wal-Mart Stores East, Inc.*, 22 BOLI at 29–32. The administrative law judge ultimately concluded that there was not sufficient evidence to show that she was objectively harassed. *Id.* at 51–52.

Of particular note, however, was that neither BOLI, nor Wal-Mart's counsel, nor the court, ever appeared to question whether harassing someone for committing adultery constituted marital status discrimination. This case shows that BOLI interprets the marital status prohibition broadly to reflect the statute's remedial purpose, and to protect employees from discrimination based on their marital status and the decisions they make with their personal relationships and sex lives, whether they are single, married, or divorced. This Court should follow BOLI's lead and conclude that the prohibition against marital status discrimination protects women who, like Richardson, cohabitate or engage in sexual activity outside of marriage.[12]

## C. NCU Engaged in Pregnancy Discrimination Under Title VII as a Matter of Law.

Under federal law, firing someone who is pregnant is illegal; firing someone for engaging in premarital sex, however, is not necessarily illegal. Here, NCU asserts that it did not terminate Richardson because she was unwed and pregnant, but instead fired her because she had premarital sex. But the clear focus by NCU was on Richardson's *pregnancy*. Further,

---

[12] Although *In re Matter of Wal-Mart Stores East, Inc.* did not exactly involve premarital sex, BOLI interpreted the "marital status" anti-discrimination prohibition to protect those who commit adultery. If adultery, however, is protected by ORS 659A.030, the same reasoning would protect those who, like Richardson, engage in premarital sex.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 23
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

even if NCU cared more about her premarital sex, the case law makes clear that if the sole method (other than self-reporting or reporting of others) of detecting premarital sex to enforce a religious premarital sex policy is through pregnancy, then this violates federal law.

Title VII prohibits discrimination in the workplace based on sex. 42 U.S.C. § 2000e-2. In 1978, Congress, in the Pregnancy Discrimination Act, amended Title VII to make clear that pregnancy discrimination constitutes sex discrimination. 42 U.S.C. § 2000e(k) ("because of sex" means, among other things, "on the basis of pregnancy, childbirth, or related medical condition"). Accordingly, a claim of pregnancy discrimination "must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000).

For sex discrimination/pregnancy claims under Title VII, the employer can be liable under two different theories of liability: disparate treatment and disparate impact discrimination. Here, NCU engaged in both types of discrimination.

**D.     NCU Engaged in Disparate Treatment Discrimination.**

The disparate treatment theory can be further subdivided into two subsets: facial discrimination and pretextual discrimination. *Reidt v. County of Trempealeau*, 975 F.2d 1336, 1341 (7th Cir. 1992) (distinguishing between a facially discriminatory employment policy and a pretextual disparate treatment case). NCU engaged in both facial discrimination and pretextual discrimination as a matter of law.

**1.     NCU's Practice Is Facially Discriminatory.**

A facially discriminatory policy is one that on its face applies less favorably to a protected group. *Frank v. United Airlines, Inc.,* 216 F.3d 845, 854 (9th Cir. 2000). When a

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 24
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

challenged policy is discriminatory on its face, the *McDonnell Douglas* burden shifting analysis (described further below) does not apply. *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1049–50 (9th Cir. 2007). Instead, a facially discriminatory practice is illegal under Title VII unless the defendant can show that practice or policy constitutes a bona fide occupational qualification ("BFOQ"). *Automobile Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 200, 111 S. Ct. 1196, 113 L. Ed. 2d 158 (1991). And in facially discriminatory cases, the intent of the discrimination is irrelevant. *Id*. at 188 ("[T]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect. Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination.").

Here, NCU's practice is facially discriminatory because the school terminates unmarried pregnant women (or requires them to marry or disassociate with their partners), but does not apply the same standard unmarried non-pregnant women out of wedlock. With Richardson, NCU was concerned that her pregnancy would begin to show and would "become obvious to all" and her swollen belly would make it "apparent to faculty and students" that she engaged in premarital sex. (NCU 7; Lindsay Dep. at 160:1–164:15, 168:9–24.) NCU's practice facially discriminates against pregnant women compared to unmarried non-pregnant women or men. *Vigars v. Valley Christian Ctr. of Dublin, Cal.*, 805 F. Supp. 802, 806 (N.D. Cal. 1992) ("However, it is clear that Title VII generally applies when a woman has been terminated for pregnancy, regardless of the reason put forth by the employer as to why that pregnancy justifies termination.").

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 25
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

Since NCU's practice of terminating (or requiring marriage of) unwed pregnant women is facially discriminatory, the burden is on NCU to show this practice constitutes a bona fide occupational qualification. *E.E.O.C. v. Catholic Healthcare W.*, 530 F. Supp. 2d 1096, 1103–04 (C.D. Cal. 2008) ("[W]here an employer imposes a facially discriminatory policy on its employees, . . . it is the defendant that must present a valid BFOQ. Otherwise, a violation of Title VII has been established. Period."). Here, there is no BFOQ that would justify NCU acting adversely towards unwed pregnant women.

2. **A Religious Ban on Extramarital Relations, Applied Primarily Through Pregnancy, Violates Title VII Because It Constitutes Pretextual Disparate Treatment.**

For pretextual discrimination, the *McDonnell Douglas* burden-shifting is applied. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). This requires the plaintiff to first make a prima facie case of pregnancy discrimination: that (1) she was pregnant, (2) she was qualified for the job, (3) she was subjected to an adverse employment action, and (4) there is a nexus between her pregnancy and the adverse employment action. *Cline*, 206 F.3d at 658. The burden then shifts to the defendant to come up with a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If this occurs, then the plaintiff must show the nondiscriminatory reason proffered by the defendant is pretext. *Id.* There are several ways to show pretext in a pregnancy discrimination claim, including providing evidence that the defendant enforces its premarital sex policy in a discriminatory manner. *Id.* at 667.

Here, Richardson has shown a prima facie case of pregnancy discrimination. NCU has asserted a nondiscriminatory reason — enforcement of a policy against premarital sex, to which

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 26
(No. 6:15-cv-01886-AA)

HKM Employment Attorneys LLP
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

Richardson's pregnancy was simply evidence of the premarital sex. The issue, then, is simply whether NCU enforces its premarital sex policy in a nondiscriminatory manner. It clearly does not.

NCU asserts that it has a policy against premarital sex, and the pregnancy for single women simply serves as *evidence* of the premarital sex. But relying on pregnancy as evidence of the premarital sex will, naturally, have a discriminatory impact on women. This is simply because only women can get pregnant after premarital sex, and therefore only women can have a physical manifestation (pregnancy) of premarital sex. Men cannot.

Accordingly, several courts have held that if pregnancy is the sole or primary method to determine whether an individual has engaged in premarital sex contrary to a religious institution's policy, this passive enforcement constitutes pretext and a violation of Title VII. Put simply, by relying principally on pregnancy as evidence, the school does not engage in a gender-neutral enforcement of the school's premarital sex policy.

In *Cline*, 206 F.3d at 657, for example, the plaintiff, a second-grade teacher at a parochial school, was visibly pregnant just a few weeks after marrying her fiancé. Upon observing her pregnancy, the school concluded (correctly) that she must have had premarital sex, and as a result refused to renew her teaching contract the following year as a result. *Id*. Cline sued for pregnancy and sex discrimination under Title VII.

The school moved for summary judgment, asserting that it fired Cline not because she was unwed and pregnant, but because she engaged in premarital sex, and that the visible signs of her pregnant belly were merely evidence that she engaged in premarital sex. The trial court granted summary judgment in favor of the school, but the Sixth Circuit Court of Appeals

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 27
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

reversed. The appellate court held that a religious school cannot "use the mere observation or knowledge of pregnancy as its sole method of detecting violations of its premarital sex policy." *Cline*, 206 F.3d at 667. The court went on to note that school "officials acknowledged in their depositions that Cline's pregnancy alone had signaled them that she engaged in premarital sex, and that the school does not otherwise inquire as to whether male teachers engage in premarital sex." *Id*. Accordingly, the court concluded that summary judgment was not appropriate.

Other courts have also held that religious bans on premarital sex applied through pregnancy violate Title VII (sex/pregnancy discrimination for employers) or Title IX (sex/pregnancy discrimination for educational institutions). *See, e.g.*, *Dias v. Archdiocese of Cincinnati*, 2013 WL 360355, at *5 (S.D. Ohio Jan. 30, 2013) (denying summary judgment for the employer when a woman at a religious school was fired after becoming pregnant by in vitro fertilization; the court noted if a policy against artificial insemination was applied unequally between men and women, this would constitute pregnancy discrimination); *Chipman v. Grant Cty. Sch. Dist.*, 30 F. Supp. 2d 975, 979–80 (E.D. Ky. 1998) (finding that plaintiffs, women who were denied admission to an honor society because their pregnancy provided evidence of their premarital sex, would likely succeed on a claim under Title IX); *Redhead v. Conference of Seventh-Day Adventists*, 440 F. Supp. 2d 211, 222–24 (E.D.N.Y. 2006) (denying summary judgment for the employer when an unmarried pregnant teacher was fired from a religious school when her pregnancy served as the evidence that she had engaged in premarital sex; the court held that "an employer enforcing such a [premarital sex] policy unevenly — *e.g.*, only against women or only by observing or having knowledge of a woman's pregnancy — is evidence of pretext); *Vigars*, 805 F. Supp. at 808 (N.D. Cal. 1992) (stating that an anti-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 28
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

premarital sex policy at a religious school violates Title VII if it is enforced through observing pregnancy, because such a policy subjects "only women" to termination "for something that men would not be, and that is sex discrimination, regardless of the justification put forth for the disparity").

Here, the undisputed facts show that NCU enforces its premarital sex policy in a strictly passive manner: it relies on self-reporting, reporting of others, and visible signs of pregnancy in single women. But NCU's purely passive approach is just a different name for sex/pregnancy discrimination because this means that NCU's premarital sex policy is applied in a discriminatory manner against women. Due to its passive policy, NCU takes an adverse employment action against 100% of women employees who become pregnant out of wedlock. But unless the pregnancy is self-reported or reported by others, the school does not take action against men who have sex or even who impregnate women out of wedlock. And unless the pregnancy is self-reported or reported by others, the school does not take action against women who engage in sex out of wedlock who do not become pregnant.

Indeed, NCU does not even try to enforce its premarital sex policy in a less discriminatory manner. NCU does not ask single employees (male or female) to sign a document every year that they have not engaged in premarital sex. NCU does not ask employees (male or female) if they have engaged in premarital sex. Although reporting of others and self-reporting of premarital sex sometimes does occur, NCU does nothing to even encourage this reporting. NCU never asks any employees if they have even sinned recently (which may prompt a confession of premarital sex) or if they want to make a confession. NCU does not ask single employees whom they live with, how many people live in their household,

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 29
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

or whether they are living with anyone else.  NCU applies its policy in a discriminatory manner and, thus, is liable for pregnancy discrimination based on disparate treatment.[13]

### E. NCU Engaged in Disparate Impact Because the School Applied a Religious Ban on Extramarital Relations Primarily Through Pregnancy.

To show disparate impact, Richardson must show that NCU has a facially neutral policy that has a disproportionate impact on a protected class — in this case, pregnant women.  Unlike a disparate treatment claim, a disparate impact discrimination claim does not require proof of intentional discrimination. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988). In federal disparate impact cases under Title VII, after the plaintiff makes a prima facie case showing that a facially neutral practice has a disparate impact on a protected class, the burden of proof shifts to the defendant to justify the practice as a business necessity.  *Connecticut v. Teal*, 457 U.S. 440, 446–47, 102 S. Ct. 2525, 73 L. Ed. 2d 130 (1982).  This is consistent with statutory prohibitions against both "overt discrimination" and "practices that are fair in form, but discriminatory in operation."  *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971).

Here, there is no doubt that NCU's passive practice of primarily relying on evidence of pregnancy to determine whether an employee engages in prohibited premarital sex has a

---

[13] In *Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 414 (6th Cir. 1996), the court upheld a lower court finding, after a bench trial, that termination of a woman for engaging in premarital sex found out by the school due to her pregnancy did not violate Title VII.  But there, the evidence suggested that the school terminated several other individuals, including men, for engaging in premarital sex.  *Id.*  For our purposes, however, the persuasiveness of this case is limited because it is not clear *how* the school found out about the others who engaged in premarital sex, nor is it clear whether the school made efforts to apply its premarital sex policy in a nondiscriminatory manner.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 30
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

disparate impact on the protected group of pregnant women. Every visibly pregnant, unmarried young woman at NCU (in this case, Richardson) has experienced an adverse employment action against her. But not all men who have engaged in premarital sex have experienced an adverse employment action against them. And not all women who have engaged in premarital sex (but have not become pregnant) have had an adverse action against them.

In a similar case, *Chipman v. Grant Cty. Sch. Dist.*, 30 F. Supp. 2d 975, 980 (E.D. Ky. 1998), the court granted a preliminary injunction against a high school for disparate-impact pregnancy discrimination. There, the plaintiffs, pregnant high school students who were not granted admission to an honor society because their pregnancy showed that they had engaged in premarital sex, sued under Title IX, a statute that prohibits sex and pregnancy discrimination in educational institutions. *Id*. The school argued that it denied admission to the plaintiffs not because the girls were pregnant, but because they engaged in premarital sex, a violation of the honor society's character requirement. *Id*. But the facts also showed that the school, also like NCU here, did not inquire of "those students offered admission to [National Honor Society] — male or female — if they had engaged in premarital sexual activity," but instead relied primarily on signs of pregnancy and "rumor and gossip." *Id*. at 977.

Applying the same legal standard as that for Title VII discrimination claims, the *Chipman* court held that plaintiff would likely succeed in showing disparate-impact pregnancy discrimination. The court concluded that "admission to the NHS has caused a significant adverse effect on the protected group, i.e., young women who have become pregnant from premarital sex and have become visibly pregnant." *Chipman*, 30 F. Supp. 2d at 979. This was simply because "[s]tatistically, 100% of such young women are not admitted to the [honor

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 31
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

society].'"  Although the high school argued that it was not basing its decision on pregnancy, but rather on non-marital sexual relations, Judge William Bertelsman concluded that the "disparate impact on young women" is "apparent."  *Id*.

This Court should reach the same conclusion here.  As noted earlier, as NCU applies its premarital sex policy, 100% of unwed and visibly pregnant women will suffer an adverse employment action.  But only a small portion, if any, of men who engage in premarital sex, or women who engage in premarital sex but do not get pregnant, will ever suffer any consequences from NCU.  And NCU makes no attempt to make this fairer.  Accordingly, NCU's admitted practice of enforcing its premarital sex rule — relying on self-reporting, gossip, and pregnancy — creates a disparate impact against pregnant women and is illegal as a matter of law.

Since Richardson has shown an adverse impact, NCU then has the burden of showing that the passive enforcement policy is a business necessity.  NCU will not make any such showing.  Accordingly, this Court should conclude that NCU has engaged in pregnancy discrimination under a disparate impact theory as a matter of law.

### F.     NCU Engaged in Pregnancy Discrimination Under ORS 659A.030 as a Matter of Law.

ORS 659A.030 prohibits discrimination based on pregnancy.  ORS 659A.030 (prohibits discrimination "based on sex"); ORS 659A.029 (defines "because of sex" to include "pregnancy").  Oregon's standard for establishing a case of discrimination is similar, if not identical, to that under federal law.  *Pascoe v. Mentor Graphics Corp.*, 199 F. Supp. 2d 1034, 1052 (D. Or. 2001).

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 32
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

For the exact reasons described above, NCU's undisputed passive enforcement practices for finding those who have engaged in premarital sex (pregnancy, self-reporting, reporting by others) result in sex/pregnancy discrimination under ORS 659A.030 as a matter of law. *Arifi v. FedEx Ground Package Sys., Inc.*, 2015 WL 4568685, at *4 (D. Or. July 28, 2015) ("Because the standards for finding discrimination under Title VII and Or.Rev.Stat. § 659A.030 are identical, the court will analyze [plaintiff's] state and federal claims concurrently.").

> **G.** **Religious Exemptions Do Not Save NCU from Its Discrimination.**

For religious institutions such as NCU, constitutional and statutory exemptions from antidiscrimination laws *sometimes* apply. But none of those possible exemptions apply here. For example, based on the First Amendment, courts have held that Title VII does not apply to "ministers" of religious institutions. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S. Ct. 694, 702, 181 L. Ed. 2d 650 (2012). Here, it is Richardson's understanding that NCU concedes that she is not a "minister" for purposes of the ministerial exemption to the state and federal antidiscrimination laws.

Further, Title VII and ORS 659A.030 do not prohibit NCU from hiring, or giving preference in hiring to, someone who shares the faith of NCU. 42 U.S.C. § 2000e-1(a); ORS 659A.006(4). The courts, however, have held (at least in the federal context) that this exemption would protect religious institutions from claims of religious discrimination only, not from pregnancy or sex discrimination. *See, e.g.*, *EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272, 1279 (9th Cir. 1982) ("The legislative history of this exemption shows that although Congress permitted religious organizations to discriminate in favor of members of their faith, religious employers are not immune from liability for discrimination based on race, sex,

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 33
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

national origin, or for retaliatory actions against employees who exercise their rights under the statute.").[14]

Accordingly, although NCU is a religious institution, and although NCU has a religious purpose, both state and federal antidiscrimination laws protect Richardson in this case and NCU cannot use any exemptions to avoid its liability.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Coty Richardson respectfully asks this Court to grant her motion for partial summary judgment.

DATED this 25th day of October, 2016.

HKM EMPLOYMENT ATTORNEYS LLP

*s/ Dan Kalish*
Daniel Kalish, OSB No. 111529
Jason A. Rittereiser (admitted *pro hac vice*)
Shemia Fagan, OSB No. 093476
HKM Employment Attorneys LLP
308 SW First Avenue, Suite 325
Portland, OR  97204
Telephone: 503-389-1130
dkalish@hkm.com
jrittereiser@hkm.com
sfagan@hkm.com

*Attorneys for Plaintiff Coty Richardson*

---

[14] Although plaintiff's counsel could not find a case that applied ORS 659A.006, the statute is similar to federal exemption, 42 U.S.C. § 2000e-1, and thus should be applied similarly. *Arifi,* 2015 WL 4568685, at *4 ("Because the standards for finding discrimination under Title VII and Or.Rev.Stat. § 659A.030 are identical, the court will analyze Arifi's state and federal claims concurrently").

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 34
(No.  6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury of the laws of the United States of America and the State of Oregon that on October 25, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Karen M. Vickers, OSB No. 913810
Blake H. Fry, OBS No. 100128
Mersereau Shannon LLP
One SW Columbia Street, Suite 1600
Portland, OR 97258
Telephone: 503-226-6400
Facsimile: 503-226-0383
Email: kvickers@mershanlaw.com
Email: bfry@mershanlaw.com

Attorneys for Defendant


Dated this 25th day of October, 2016.

_s/Lara Flores_____
Lara Flores

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM - 35
(No. 6:15-cv-01886-AA)

**HKM Employment Attorneys LLP**
308 SW First Avenue, Suite 325
Portland, OR 97204
(503) 389-1130