

# Gene De Young

**From:** Dennis Lindsay
**Sent:** Wednesday, June 24, 2015 4:13 PM
**To:** Gene De Young
**Subject:** FW: Fall Semester

Gene,

This was my initial reply to Coty's email from May 21...

Dennis

Dennis R. Lindsay
Vice President for Academic Affairs and Dean of the Faculty P 541-684-7208 dlindsay@nwcu.edu
www.nwcu.edu

NORTHWEST CHRISTIAN UNIVERSITY
Wisdom · Faith · Service
828 E. 11th Ave. | Eugene, OR 97401

-----Original Message-----
From: Dennis Lindsay
Sent: Friday, May 22, 2015 2:07 PM
To: Coty Richardson; Heike McNeil
Subject: RE: Fall Semester

Hello Coty,

What a surprise! I'm sorry I haven't gotten back to you in reply until now. My last two days have been full and challenging.

I'll need to touch base with Heike when she is back in town. When do you leave for your trip to Virginia and when do you plan to be back. We will certainly want to sit down together for further discussion.

Blessings,

Dennis

Dennis R. Lindsay
Vice President for Academic Affairs and Dean of the Faculty P 541-684-7208 dlindsay@nwcu.edu
www.nwcu.edu

NORTHWEST CHRISTIAN UNIVERSITY
Wisdom · Faith · Service
828 E. 11th Ave. | Eugene, OR 97401

-----Original Message-----
From: Coty Richardson

Sent: Thursday, May 21, 2015 11:32 AM
To: Dennis Lindsay; Heike McNeil
Subject: Fall Semester

Good morning Dennis and Heike,
I have not had a chance to catch either of you and have a face to face conversation with all the busy end of year activities, but do want to touch base with you if even through e-mail followed by further discussion later before I head out to Virginia for a week and you get busy with summer events and before we know it we are in July!

I want to touch base with you about some challenges that will potentially arise in the fall, primarily the end of the semester. I am expecting my third (and final!) baby in the fall, with a November 26 due date. Although the prospect of a new baby is exciting, it does present some challenges for the end of fall semester. Granted that all goes well and the dates are accurate, this leaves the week of thanksgiving break and dead week up for consideration as to how to handle these weeks appropriately during this time. Of course, one reason for touching base is to let you know the situation and the other is to brainstorm ideas of how each of you think might be the best way to handle this.

I have no doubt I can administer finals and be there for those, the problem is in the week or possibly two prior to the final that I would I be out. I have thought of a couple of options:

- Biomechanics and Kinesiology have final projects that are due at the end of the semester, the last week can be devoted to research and completion of those with class work the week of Thanksgiving break to think about. I usually give an exam in Kinesiology that week, which could be proctored possibly and leaving Biomechanics open for suggestions. It looks like there would be 3 lectures/class times to think about.

- Anatomy and Physiology will have finished up with Labs by that time and be finishing the nervous system. This class does run 3 days a week for lecture and is the one I would be most concerned about. It would appear there would be about 4 lectures times to fill/come up with a solution. Other than independent study, I am still thinking up a good strategy for this class that would not impact the students negatively.

I feel confident that there is a reasonable solution to find for each course and that the semester can be finished off successfully with minimal impact on the students, but I am open to hearing your suggestions and working together to find an agreeable solution. Maybe we will need to sit down and take a look at the dates and talk further? In the meantime, I will be working on the syllabus to have a better understanding of what the course schedule will be and how we can adjust as needed.
I hope the summer is off to a great start for both of you!
Sincerely,
Coty


Coty Richardson, M.S.
Instructor of Exercise Science
P 541-349-7461
crichardson@nwcu.edu
www.nwcu.edu

NORTHWEST CHRISTIAN UNIVERSITY
Wisdom · Faith · Service
828 E. 11th Ave. | Eugene, OR 97401

Aid Memoire

Date: June 24, 2015

From: Dennis Lindsay

Re: Meeting with Coty Richardson

I met with Coty Richardson today, with Heike McNeal present, in follow-up to Coty's email to me and Heike from May 21, 2015, in which she informed us that she is pregnant, with her baby due in the course of the fall 2015 semester. The pregnancy announcement was a surprise to both Heike and me, since neither of us was aware that Coty was married or in a relationship.

Coty confirmed in our meeting that she is not married, but has been in a co-habitation relationship with the father of the baby over a period of years. I reminded Coty that sexual intimacy outside of marriage is incompatible with NCU's standards. I reminded her that we have very clear guidelines and expectations of our students in this respect, and that we expect our employees to comply with this standard as well. Faculty especially occupy the position of role models for our traditional undergraduate students and that it is necessary for faculty to model the institution's standard in their own lives and relationships. I questioned Coty about her immediate plans for her relationship with the father of her baby. She spoke only vaguely about the possibility of getting married, but was very non-committal, not wanting to rush into the marriage relationship.

I indicated to Coty that she must make a consequent decision and commitment as regards her relationship with the father of her baby and in light of NCU's standard. I made it clear that compliance with this standard constitutes a condition of employment with NCU. I assured her that if she chose not to marry (i.e., if marriage to this individual would not be a happy prospect), then NCU would continue to support her as a single mother (which we were under the impression that we had been doing all along); I also assured her that we would support her and celebrate with her if she and her partner chose to marry. However, I advised her that we could not support her continued cohabitation apart from marriage. I advised her that we have upheld this same standard with other employees in the past.

I advised Coty that I did not need an immediate answer from her at the time of this meeting. I recommended that she talk with her partner. I recommended that she and her partner meet with their pastor also to seek counsel. I did, however, tell her that I needed to know very soon what her decision would be in the event that we needed to make alternate plans for the fall semester 2015.

I attempted to demonstrate and communicate genuine pastoral concern for Coty throughout the conversation (which lasted about 20 minutes). I closed the meeting with a word of prayer for her.

Karen Vickers



-----Original Message-----
From: Dennis Lindsay
Sent: Tuesday, June 30, 2015 4:21 PM
To: Gene De Young
Cc: Joseph D. Womack
Subject: FW: Follow up from last week's meeting

ene,

Just received this email from Coty. I'm having Erica hold on to the letter until we touch base again and determine how to proceed.

Dennis


Dennis R. Lindsay
Vice President for Academic Affairs and Dean of the Faculty P 541-684-7208 dlindsay@nwcu.edu
www.nwcu.edu

NORTHWEST CHRISTIAN UNIVERSITY
Wisdom · Faith · Service
828 E. 11th Ave. | Eugene, OR 97401


-----Original Message-----
From: Coty Richardson
Sent: Tuesday, June 30, 2015 4:13 PM
To: Dennis Lindsay
Subject: RE: Follow up from last week's meeting

Greetings Dennis,

I received your voicemail from 6/29/15 and 6/30/15, checking in with me and I am writing you in response to those voicemail and our most recent meeting on 6/24/15, regarding my current pregnancy and the upcoming fall semester. We ended our meeting with you requesting that I make some very important decisions about my personal situation and any future marriage plans and return to you with a decision, which is the purpose of this e-mail today. It was made very clear to me that if I do not get married or express the mistake of my actions and decide to proceed solo in this pregnancy by the start of the upcoming semester that NCU cannot support this decision, you asked me to carefully consider this option in order to continue at NCU in the fall of 2015 and to announce my decision or actions by the first of August, 2015.

I have since had a chance to reflect and consider our discussion regarding my pregnancy and my current position at NCU. After deliberate and careful thought, I would like to preserve my privacy and decline speaking about my personal situation to my direct supervisors, co-workers, colleagues, or past and present students at this time. I do understand the concerns and points that you brought to my attention at our meeting and have carefully considered my options, as well as my own personal position on the matter. However, I feel that discussion of my personal life at my place of work involving matters of marriage, the health of my sexuality, my reproduction, and personal choices are not only inappropriate but also uncomfortable regardless of the institution in which I work. At this time, I choose to refrain from discussing matters of my pregnancy and personal life at work unless it directly pertains to my skills and abilities to perform my professional duties.

I respectfully request that the University respect my right to privacy on the matter and trust that I will handle my personal matters appropriately, responsibly, maturely, and morally while also allowing me the freedom to do so without interference or by requiring me to disclose information about my personal situation that does not directly impact my abilities to do my job. I request that the University permit me to continue with my professional duties without the distraction or involvement into personal areas of my life. Although, I appreciate and respect the familial atmosphere at NCU; I do feel that there are certain matters which are distracting and inappropriate to weave into a professional environment and also feel that disclosing the intimate details of my pregnancy or marital status are inappropriate in nature and should not be required of me to disclose in order to continue to carry out my professional duties as Assistant Professor of Exercise Science at NCU.

I do not foresee this pregnancy interfering with my ability to adhere to the commitments that I have made now or in the future, nor will it impede my skills, abilities, or duty to carry out the associated tasks and performance expected of me in this position. In terms of the academic consequences of my pregnancy I do see a very minimal absence during the week that I am recovering from childbirth which will fall during dead week of fall semester, but have full and complete plans to follow through with the obligations of my position and expected schedule during postpartum and beyond with as little implication to the University and students as possible. I very much enjoy what I do and contribute to NCU and am fully committed to continuing my professional performance in the ways expected of me, while also continuing to grow and improve in my career, personal life, continuing academics, and Christ centered life so that I can mature in my faith and offer the best of me to the University now and in the future. I ask in closing that you please consider and respect my position on this matter. I am hopeful that you can understand where I am coming from.

Respectfully.
Coty Richardson, M.S.
Assistant Professor of Exercise Science
P 541-349-7461
crichardson@nwcu.edu
www.nwcu.edu

NORTHWEST CHRISTIAN UNIVERSITY
Wisdom · Faith · Service
828 E. 11th Ave. | Eugene, OR 97401

NCU 5

From: Dennis Lindsay
Sent: Tuesday, June 30, 2015 3:14 PM
To: Coty Richardson
Subject: Follow up from last week's meeting

Hello Coty,

I've tried to phone you yesterday and today to follow up on our meeting from last week. I want to give you a quick heads up that I'm sending a letter to you in the mail today that recaps our discussion from last Wednesday and solicits your response. I didn't want you to be caught off-guard when you receive the letter in the post.

I'd be more than happy to talk with you if you get this email today and you want to phone me at the office. After today, I'll be out of the office for the rest of the week for a Cabinet retreat.

Blessings,

Dennis


[cid:image002.png@01D0B347.75C06F60]Dennis R. Lindsay Vice President for Academic Affairs and Dean of the Faculty P 541-684-7253 dlindsay@nwcu.edu<mailto:dlindsay@nwcu.edu> www.nwcu.edu<http://www.nwcu.edu/>

NORTHWEST CHRISTIAN UNIVERSITY
Wisdom · Faith · Service
28 E. 11th Ave. | Eugene, OR 97401
[cid:image014.png@01D0B32A.464AF420]<http://www.facebook.com/NorthwestChristianUniversity>[cid:image015.png@01D0B32A.464AF420]<http://www.twitter.com/@NCUCommunity>
[cid:image016.png@01D0B32A.464AF420] <http://www.linkedin.com/company/northwest-christian-university> [cid:image017.png@01D0B32A.464AF420] <http://www.gobeacons.com/>
[cid:image018.png@01D0B32A.464AF420] <http://www.nwcu.edu/>

July 6, 2015


NORTHWEST CHRISTIAN UNIVERSITY

Ms. Coty Richardson
[address redacted]

Dear Coty:

I am writing this letter to confirm our conversation of June 24, 2015, regarding your employment at NCU, and to respond to your June 30, 2015, email.

In your email, you focus on the impact of your pregnancy on performance of your work and your right to privacy. Neither concern is the issue NCU has with your continued employment.

At no time during our discussion or presently do I have a concern about your pregnancy affecting your ability to teach. NCU has had other pregnant employees and we've always worked with them to manage their work. Pregnancy is not the issue for us.

Regarding your privacy concerns, before this pregnancy, it was known to NCU staff, students, and myself you are a single mother. You informed us of your pregnancy and, during our conversation, shared that you are pregnant outside of marriage and cohabiting with the baby's father. I was clear with you that NCU's concern is your lifestyle which is inconsistent with the faith based standards under which NCU operates and which you self-disclosed.

Conditions of your employment require compliance with the Faculty Handbook. The Faculty Handbook reflects that NCU is an academic institution with its foundation in the Christian faith. NCU's goals include that of an institution of integrity, mindful of its heritage and Christian service.

Your pregnancy outside of marriage and cohabitation with the father is incompatible with NCU's missions and goals. NCU expects its faculty to be role models for the students. Since your marital status is generally known and your pregnancy will become obvious to all, it will be apparent to faculty and students you have engaged in a lifestyle that does not reflect faith based conduct consistent with NCU goals or expectations.

In order to continue your employment, you must conform your lifestyle to reflect the faith based perspective of NCU. If you choose to continue to cohabitate outside of marriage, your employment with NCU must end.

Please inform me within seven days of the date of this letter of your decision.

Sincerely,

Dennis R. Lindsay
Vice President for Academic Affairs and Dean of the Faculty

cc: Joseph Womack

*Established 1895*

Wisdom · Faith · Service

828 E. 11th Ave., Eugene, OR 97401-3745 • www.nwcu.edu • 541-343-1641

July 14, 2015

Dear Dennis,

I have received your letter dated July 6, 2015, regarding the matter of my continued service at NCU and the justifications surrounding your reasons for ending my employment status. You make reference to my e-mail to you on June 30, 2015, confirming my request for privacy and respect for my choice not to discuss matters of my personal life or my pregnancy any further unless it directly pertains to my ability to work and perform in my current position. This included any further discussion about my marital or relationship status associated with the pregnancy. I would like to continue to focus on the fact that you mention in your letter that your concern is not with my pregnancy and the impact it might have on my teaching and leave my personal life out of the equation.

Regarding your justifications for ending my employment at NCU, they are false and inaccurate. You reference my privacy concerns in your letter, stating that my relationship status was common knowledge to staff, students, and yourself. You also mention that I self-disclosed this information during a conversation informing you of my pregnancy. This is simply untrue and based purely on assumptions. I have not openly discussed my relationship, marital, or status as a single mother with staff or students at NCU until questioned by my co-worker and direct supervisor, only after notifying you both of my pregnancy. In my initial e-mail informing you and Heike of my pregnancy, I did not self-disclose my relationship status. I had never talked about my personal situation until having coffee with Heike to discuss the fall schedule conflicts surrounding my pregnancy after my initial e-mail. Additionally, I only shared the basic details of my situation after being questioned in our meeting on June 24, 2015 by you, as my direct supervisor about my relationship with the father of the baby.

Your initial concerns in that June 24th meeting were that since I am now pregnant, I will soon start showing and people will start asking questions. I was given two options to handle my pregnancy status and still remain employed at NCU. I was told that I can both admit the pregnancy was a mistake and continue as a single mother that has no relationship with the father or I could get married by August of this year. Your concerns of cohabitation are not only based on assumptions, but they are inaccurate and secondary to what you expressed as your primary terms and requirements based solely on my pregnancy and marital status. Additionally, I never shared that I was cohabiting with the father in our meeting and I am not interested in compromising on any of these options nor do I wish to continue to have conversations about my personal life at work.

In your letter, you claim this is not about my pregnancy but rather my "lifestyle which is inconsistent with faith based standards". Yet, questions about my lifestyle have never surfaced until I notified you of my pregnancy status. Furthermore, how do you measure my faith based on my pregnancy status? Not only are your justifications false, they are based on assumptions due to your own ideas of how you wish to edit my life in order to conform to your perspective of who I am or should be. You also mention integrity, faith based conduct, and being mindful of Christian service in your letter. I can't help but notice the misplaced focus, hypocrisy, and contradictions here. My faith is not measured by assumptions or judgments imposed upon me, nor is my integrity and mindfulness of the Christian heritage.

In closing, I maintain my position of privacy and unwillingness to discuss matters of my personal life, relationships, or pregnancy unless it directly impedes my ability to do my job. If my employment must end with NCU due to personal circumstances as you stated in your letter, I do not have any intentions of resigning at this time. Please advise on whether I should continue prepping for the fall term and any further concerns you might have with the scheduling surrounding my due date. I will also drop a copy of this letter in your campus mail box.

Respectfully,

*Coty*

Coty Richardson



July 22, 2015         NORTHWEST CHRISTIAN UNIVERSITY

Ms. Coty Richardson
6975 Thurston Rd
Springfield, OR 97478

RE:   Employment with NCU

Dear Coty:

I have read and considered your letter to me of July 14, 2015. Based upon the letter, I am still concerned that you do not understand our concerns that have led to this discussion.

Our focus is maintaining an institution which reflects its core values based upon the Christian faith. Those core values do not allow for the lifestyle which you have chosen and, based upon your letter, intend to continue. I have tried to be clear with you that sexual relations outside of marriage is contrary to the University's core values. Despite your statements, it is known within the University, both to faculty and to students, that you are a single mother and your pregnancy would result in a very demonstrative violation of that core value. I understand your desire to keep your private life private. However, your actions have resulted in that not being possible.

As a result, we will not be able to engage you as an employee at the University at any level. We are prepared to offer you a separation package in the form of payments equal to your current monthly gross pay and 90% of your medical insurance premium for a period of five months (from August 15) to assist you financially and give you an opportunity to find other employment. However, this offer is contingent upon your agreement to the terms of the enclosed Separation Agreement.

Regardless of your decision to sign the Separation Agreement please understand that your employment with NCU is now at an end.

Sincerely,

Dennis R. Lindsay
Vice President for Academic Affairs and Dean of the Faculty

cc. Joseph Womack, Gene DeYoung

Established 1895

Wisdom · Faith   Service

828 E. 11th Ave., Eugene, OR 97401-3745 • www.nwcu.edu • 541-343-1641



# FACULTY CONTRACT

## ACADEMIC YEAR: 2015-2016

**Name:** Coty Richardson  **Employee ID#:** 17312

**Type of Contract:** Continuing (9 month salary basis)

**Commencement Date:** August 15, 2015

**Faculty Rank & Position:** Assistant Professor of Exercise Science

**Salary and Benefits:**
Salary: **$36,575.00**  (Note: 9 month salaries are normally paid out over 12 months)
Benefits: As outlined in the Staff/Faculty Personnel Manual

**Conditions of Contract:**
1. Report to the Vice President for Academic Affairs and Dean of Faculty as your direct supervisor.
2. Maintain a full time teaching load (or equivalent) as described in the Faculty Handbook and/or as assigned by your supervisor.
3. Maintain and post regular office hours as specified in the Faculty Handbook.
4. Complete embedded course assessment and/or program assessment activities via Taskstream, and facilitate the evaluation of your classes each semester, as required.
5. Fulfill all required duties and expectations as outlined in your position description, as well as any other duties that may be assigned by your supervisor.
6. Follow the current Faculty Handbook as it pertains to faculty roles and responsibilities.
7. Other duties and responsibilities as well as faculty rights and privileges are described in the Faculty Handbook and Staff and Faculty Personnel Manual. Employment under this contract may be terminated for cause at any time, as specified in the Faculty Handbook, page 27, in which event all salary and other benefits shall cease as of the effective date of termination.

Reviewed by _____  Date 2/23/15
Vice President for Academic Affairs and Dean of the Faculty

Reviewed by _____  Date 2/25/15
Vice President for Finance and Administration and CFO

Accepted by _____  Date 3/2/15
Faculty Member

Authorized by _____  Date 2/25/15
President




April 24, 2015

Ms. Coty Richardson
Instructor of Exercise Science

Dear Coty,

On January 9, 2015 the members of the Faculty Review Panel met with you for your third annual review, as specified in the NCU Faculty Handbook. The third year review is a summative review constituting the basis for the Panel's recommendation for the renewal of your faculty contract as a 'continuing contract' for subsequent years. In addition to the interview, the Panel reviewed and considered the following items: your faculty portfolio; evaluative comments from your self-evaluation and your supervisor; observations from a faculty peer; and student evaluations from courses you have taught so far this year. Additionally, the Panel received your application for promotion in rank from Instructor to Assistant Professor of Exercise Science. This letter provides a summary of your review with the Panel.

The most important thing the Panel wants you to know is that we are extremely grateful to have you as a colleague here at NCU and we value your expertise and your contribution to the mission of NCU, and we hope you will make NCU your home for many years to come! Your faculty portfolio is complete and well-organized. Your peer evaluation and student evaluations are all very strong and indicate that you are effective in your teaching and that you are engaged with your students.

The Panel wishes formally to commend you for the following items:
- You have made significant progress over the past three years in developing a comfort level with students in the classroom, and this is reflected by your student evaluations. We commend you for the attention that you have given to improving your courses and enhancing your lecture style.
- We especially commend you for your pursuit of the terminal degree. We understand that this is not an easy pathway for you, along with the demands of full-time teaching and family life outside of NCU. Your commitment in this area – and your progress to date – are highly commendable!

The Panel feels that you have made wonderful progress as an instructor over these past three years. We encourage you to continue to work on areas where you feel you could improve, and we encourage you to find and set those 'boundaries' in your work that allow you a healthy balance of professional and family life. We want to support you in any way we can – particularly through the period of doctoral studies. Though this is the last routine annual review with the Review Panel, we invite you to call upon us and your other faculty colleagues if ever there are ways you feel we could support you better.

*Established 1895*

Wisdom · Faith · Service

828 E. 11th Ave., Eugene, OR 97401-3745 • www.nwcu.edu • 541-343-1641

NCU 43



In summary, the Panel enjoyed very much the interview with you. We hope that you were encouraged by the time with us. The Panel warmly and unanimously recommends that your contract be renewed as a continuing contract. The Panel also deems that you fulfill the requirements for promotion to the Assistant Professor rank and recommends that you be granted that promotion, effective August 2015.

On behalf of the Faculty Review Panel,

Dennis R. Lindsay
Vice President for Academic Affairs and Dean of the Faculty

cc.   Gene DeYoung, Joseph Womack




March 31, 2013

Coty Richardson
Instructor of Exercise Science

Dear Coty,

On March 8, 2013, the members of the Faculty Review Panel met with you for your first annual review, as specified in the NCU Faculty Handbook. The first and second year reviews are designed to be 'formative' in nature, and constitute the basis for the Panel's recommendation for the renewal of your faculty contract in the subsequent academic year. In addition to the interview, the Panel reviewed and considered the following items: your faculty portfolio; your current job description; evaluative comments from your supervisor; classroom observations from two faculty peers; and student evaluations from courses you have taught since your previous review. This provides a summary of the recommendation from the Panel.

Your portfolio is thorough and organized, but still awaits a current CV. Your hard work and expertise make an enormous difference in the Exercise Science program and the new Biology major: one is high on the list of the school's healthiest programs, and the other promises to grow into an equally healthy academic unit. Your teaching career has reached an exciting turning point, as you report having begun the transition from beginner to experienced educator. The observations of your faculty peers bear that out: when you step out boldly and exercise your gifts, you are a skilled and capable educator. We encourage you to continue to test your growing confidence and comfort level in the classroom, to encourage student interaction throughout class meetings, and to convey the expectation that students will be attentive and engaged at all times.

Your scholarly activity has focused on membership in ACSM, as well as exploring the possibility of pursuing a terminal degree. We urge you to continue these. You expressed caution about becoming overloaded, and we endorse that caution wholeheartedly. The struggle to manage all the demands on our time and resources is universal among NCU faculty members. We have all been where you are, and your firm control over your timetable is appropriate. You voiced a tentative plan to proceed with graduate study within three years, and we believe that by your third year, you will feel far more capable of keeping everything in balance. In the interim, we commend you for your participation in ACSM.

Your service commitments, to NCU, your church, and the surrounding community, are coming along nicely. The information and group training sessions with your daughter's soccer team are a good way to bless others with your expertise and gifts, and the time you volunteer to help with your daughter's youth group is an opportunity to encourage

*Established 1895*

Wisdom · Faith · Service

828 E. 11th Ave., Eugene, OR 97401-3745 • www.nwcu.edu • 541-343-1641

discipleship and make fellowship possible. Despite your tight schedule, you have given of your presence and knowledge to meet needs, and we appreciate that and invite you to continue.

In summary, the Panel enthusiastically recommends you for a renewed contract as a well-qualified instructor with a sincere commitment to students and peers.

On behalf of the Faculty Review Panel,

Dennis R. Lindsay
Vice President for Academic Affairs and Dean of the Faculty


cc: Joseph Womack, Lisa Castlebury

# Professional Behavior

Faculty at Northwest Christian University have standards of conduct that provide the foundation for a vibrant academic life, promote scientific progress, enhance students' spiritual foundations, and prepare students for responsible citizenship and ethical leadership in their church and the community, both locally and globally.

**Ethics**

The academic community of Northwest Christian University flourishes when all its members are committed to these fundamental values: integrity, honesty, trust, fairness, respect, dignity, responsibility, and spirituality. From these values flow principles of behavior that enable the academic community to translate ideals into action. Academic dishonesty is not tolerated at the University and is grounds for disciplinary action.

**Fraternization**

Faculty members are, or may appear to be, in positions to exercise power or authority, directly or indirectly, over students whether or not an individual student is enrolled in their classes, are subject to their direct supervision, or have some form of business to transact with offices at the University. Therefore, the University prohibits romantic, sexual, or exploitative relationships between faculty members and students. If any such relationship is reported and confirmed, the faculty member is subject to disciplinary procedures up to and including dismissal for cause. Disciplinary procedures and dismissal for cause apply in all such cases. If the spouse or partner of a faculty member is a student at the University, this fraternization policy does not apply.

**Attire**

All faculty are expected to dress in an appropriate professional manner. In general, jeans, shorts, and tennis shoes are not appropriate in the classroom, with the exception of physical education classes.

## Harassment and Discrimination-Free Workplace

NCU is committed to fair and impartial treatment of employees, job applicants, contractors, clients and agents of the University, and to maintaining a discrimination and harassment-free work environment where people treat one another with respect.  This means that NCU maintains a consistent policy prohibiting discrimination in the employment and treatment of its employees.  The University's policy is not to discriminate against any employee or applicant for employment because of age (within statutory limits), race, color, sex, national origin or ancestry, marital status, disability, sexual orientation, or any other protected status to the extent prohibited by applicable non-discrimination laws with respect to hiring, promotion, demotion, transfer, recruitment, termination, salary level or other forms of compensation, or any other term or condition of employment.

The University also has a policy absolutely prohibiting harassment based on protected status during employment.  NCU defines harassment as any unwelcome verbal, physical or visual conduct based on age (within statutory limits), race, religion, color, sex, national origin or ancestry, marital status, disability, sexual orientation, or any other status protected by law or policy, when that conduct is made explicitly or implicitly a term or condition of employment, is used as a basis for employment decisions, or has the purpose or effect of unreasonably interfering with performance or of creating an intimidating, offensive or hostile work environment.

1. Any employee who believes that the actions or words of another employee or agent of the University may constitute discrimination or harassment is urged to report that belief immediately to his/her supervisor, to their vice president, or to any person in authority that the employee trusts. Supervisory and management level employees who believe that an employee or agent of the University may have engaged in discrimination or harassment must report that belief immediately to his/her supervisor, or to their vice president.
2. In addition, a Grievance Report should be filed with the Vice President for Finance and Administration immediately.

All reports of possible discrimination or harassment will be investigated promptly and in an impartial manner.  Complaints will be kept confidential to the maximum extent possible, but the University cannot promise absolute confidentiality.  If it is necessary to make the identity of involved employees known to others, the involved employees will be notified in advance.

In all cases, the complaining or reporting employee will be advised of the University's findings and conclusions.

In all cases where a finding of discrimination or harassment is established, NCU will initiate appropriate remedial action to address the issue.  In all cases, the appropriate corrective action will reflect the severity of the problem, the offending employee's overall work record and a full consideration of the circumstances surrounding the situation.  When deemed appropriate, disciplinary action, up to and including discharge, will be imposed on employees who engage in conduct amounting to discrimination or harassment.

Any intimidation, coercion, discrimination or retaliation against an individual who files a complaint, or who testifies, assists or participates in any manner in an investigation will not be tolerated.  All such acts against complainants or other participants should be reported immediately to a supervisor, or to their vice president.

NCU 571