**KAREN M. VICKERS,** OSB No. 913810
kvickers@mershanlaw.com
**BLAKE H. FRY,** OSB No. 100128
bfry@mershanlaw.com
**BETH F. PLASS,** OSB No. 122031
bplass@mershanlaw.com
MERSEREAU SHANNON LLP
One SW Columbia Street, Suite 1600
Portland, Oregon 97258-2089
Telephone: 503.226.6400
Facsimile: 503.226.0383

      Of Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| COTY RICHARDSON, | Case No. 6:15-cv-01886-AA |
| Plaintiff, | |
| v. | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| NORTHWEST CHRISTIAN UNIVERSITY, an Oregon Corporation, | *ORAL ARGUMENT REQUESTED* |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

LR 7-1(a) CERTIFICATE ............................................................................. 1

LR 7-2(b) CERTIFICATE ............................................................................. 1

INTRODUCTION ........................................................................................... 1

STANDARDS .................................................................................................. 2

BACKGROUND ............................................................................................. 2

ARGUMENT AND AUTHORITY ................................................................. 7

    I.   Ministerial Exception ............................................................................ 7

    II.   Disparate Treatment Claims ............................................................... 11

        A.  Burden Shifting Framework ........................................................... 11

        B.  Pregnancy/Sex Discrimination ...................................................... 13

            a.   prima facie case ....................................................................... 14

            b.   legitimate non-discriminatory reason .................................... 15

            c.   pretext ...................................................................................... 15

            d.   facial discrimination ............................................................... 16

        C.  Marital Status Discrimination ........................................................ 17

        D.  Religious Discrimination ................................................................. 17

            a.   religious educational institution ............................................. 18

            b.   religious curriculum ................................................................ 21

            c.   BFOQ ........................................................................................ 21

            d.   Oregon law exemption ............................................................ 23

    III.   Disparate Impact Claims .................................................................... 24

        A.  Pleading Requirements ................................................................... 25

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

B.  Failure to Exhaust ............................................................................26

C.  Merits ...........................................................................................26

IV.  First Amendment ...........................................................................27

V.  Wrongful Discharge .......................................................................27

VI.  Wage Claim ...................................................................................28

VII.  Intentional Infliction of Emotional Distress .................................29

VIII. Breach of Contract ........................................................................31

IX.  Specific Treatment in Specific Situations .....................................32

X.  Damages ........................................................................................33

CONCLUSION ......................................................................................35

TABLE OF AUTHORITIES

FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................. 2

*Aragon v. Republic Silver State Disposal, Inc.*,
   292 F.3d 654 (9th Cir. 2002) .............................................................................. 12, 14

*Arigbon v. Multnomah Cnty.*,
   2010 WL 2038839 (D. Or. May 20, 2010) ................................................................ 16

*Arnold v. Pfizer, Inc.*,
   970 F. Supp.2d 1106 (D. Or. 2013) ......................................................................... 28

*Boyd v. Harding Academy of Memphis, Inc.*,
   88 F.3d 410 (6th Cir. 1996) ..................................................................................... 15

*Brown v. Puget Sound Elec. Apprenticeship & Training Trust*,
   732 F.2d 726 (9th Cir. 1983) .................................................................................... 26

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................. 2

*Chuang v. Univ. of Calif. Davis Bd. of Trustees*,
   225 F.3d 1115 (9th Cir. 2000) ............................................................................. 15, 16

*Clapper v. Chesapeake Conference of Seventh-Day Adventists*,
   1998 WL 904528 (4th Cir. 1998) ............................................................................... 9

*Coghlan v. Am. Seafoods Co. LLC*,
   413 F.3d 1090 (9th Cir. 2005) ............................................................................. 11, 13

*Coleman v. Quaker Oats*,
   232 F.3d 1271 (9th Cir. 2000) .................................................................................. 12

*Cornwell v. Electra Cent. Credit Union*,
   439 F.3d 1018 (9th Cir. 2006) .................................................................................. 12

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*Dawson v. Entek Intern.,*
    630 F.3d 928 (9th Cir. 2011) ................................................................. 12, 13

*DeMarco v. Holy Cross High School,*
    4 F.3d 166 (2d Cir. 1993)........................................................................ 16

*Diaz v. Eagle Produce Ltd. Partn.,*
    521 F.3d 1201, 1207 (9th Cir. 2008) ...................................................... 12

*Donaldson v. Microsoft Corp.,*
    205 F.R.D. 558 (W.D. Wash. 2001) ....................................................... 26

*E.E.O.C. v. Farmer Bros. Co.,*
    31 F.3d 891 (9th Cir. 1994) .................................................................... 26

*E.E.O.C. v. Kamehameha Schools/Bishop Estate.,*
    990 F.2d 458 (9th Cir. 1993) ............................................................. 18-23

*E.E.O.C. v. Townley Eng'g & Mfg. Co.,*
    859 F.2d 610 (9th Cir. 1988) .................................................................. 18

*Gonzales v. Barrett Business Services, Inc,*
    2006 WL 1582380 (E.D. Wash. June 6, 2006)....................................... 33

*Gordon v. Kleinfelder W., Inc.,*
    2012 WL 844200 (D. Or. Mar. 12, 2012) .............................................. 29

*Griggs v. Duke Power Co.,*
    401 U.S. 424 (1971).................................................................................. 24

*Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C.,*
    132 S.Ct. 694 (2012)......................................................................... 8, 9, 27

*Hutton v. Jackson Cnty.,*
    2010 WL 4906205 (D. Or. Nov. 23, 2010)............................................. 32

*John v. Georgia-P. Corp.,*
    697 F. Supp. 1156 (D. Or. 1988) ........................................................... 24

*Jones v. Northwest Telemarketing, Inc.,*
    2000 WL 568352 (D. Or. April 7, 2000) ............................................... 28

*Jones v. Wolf,*
    443 U.S. 595 (1979).................................................................................. 27

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*Karnes v. Regence Bluecross Blueshield of Or.,*
2011 WL 1402825 (D. Or. Apr. 12, 2011) ........................................... 25

*Kedroff v. St. Nicholas Cathedral,*
344 U.S. 94 (1952) ................................................................................. 27

*Laird v. Marion Cnty.,*
2005 WL 1669828 (D. Or. July 14, 2005) ...................................... 30, 31

*Lindsay v. People's Utility District,*
140 F.Supp. 3d 1077 (D. Or. 2015) ...................................................... 28

*Lovell v. Sky Chefs Inc.,*
2015 WL 4488026 (D. Or. July 22, 2015) ............................................ 28

*Moran v. Selig,*
447 F.3d 748 (9th Cir. 2006) ................................................................. 14

*Navajo Nation v. U.S. Forest Serv.,*
535 F.3d 1058 (9th Cir. 2008) ............................................................... 25

*Nelson v. Pima Community Colleg*e,
83 F.3d 1075 (9th Cir. 1996) ................................................................... 2

*Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.,*
462 U.S. 669 (1983) ............................................................................... 13

*New York v. Cathedral Aacad.,*
434 U.S. 125, 133 (1977) ....................................................................... 11

*Ngo v. Reno Hilton Resort Corp.,*
140 F.3d 1299, 1304 (9th Cir. 1998) ..................................................... 34

*Noga v. Costco Wholesale Corp.,*
583 F.Supp.2d 1245 (D. Or. 2008) ....................................................... 30

*Noyes v. Kelly Servs.,*
488 F.3d 1163 (9th Cir. 2007) ............................................................... 13

*Pena v. Comm. Service Agency of Lane Cnty.*
2010 WL 3419520 (D. Or. Aug. 30, 2010) ........................................... 24

*Prasnikar v. Our Savior's Lutheran Church,*
79 F.Supp.3d 1184 (D. Or. 2015) .......................................................... 34

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*Raytheon Co. v. Hernandez*,
    540 U.S. 44 (2003)..................................................................... 26

*Rweyemamu v. Cote*,
    520 F.3d 198 (2d Cir. 2008)..................................................... 16

*Ryan v. HSC Real Estate*,
    2010 WL 3222443 (D. Or. Aug. 11, 2010)............................... 28

*Shaw v. R.U. One Corp.*,
    822 F.Supp.2d 1094 (D. Or. 2011) .......................................... 28

*Spencer v. World Vision, Inc.*,
    633 F.3d 723 (9th Cir. 2011) ............................................. 19-21

*Texas Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981)................................................................... 16

*Texas Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
    135 S. Ct. 2507 (2015)........................................................ 25, 26

*U.A.W. v. Johnson Controls, Inc.*,
    499 U.S. 187 (1991)................................................................... 22

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    865 F.2d 1539 (9th Cir. 1989) .................................................... 2

*Wallis v. J.R. Simplot Co.*,
    26 F.3d 885 (9th Cir. 1994) ...................................................... 13

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006) .................................................... 25

*Watson v. Jones*,
    80 U.S. 679 (1872)................................................................... 27

*Young v. United Parcel Service, Inc.*,
    135 S. Ct. 1338 (2015)............................................................. 16

STATE CASES

*Brewer v. Erwin*,
    287 Or. 435, 600 P.2d 398 (1979) ........................................... 30

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*Bruce v. S.M. Motor Co., Inc.,*
    81 Or. App. 227, 724 P.2d 911 (1986)........................................................ 28, 29

*Clemente v. State,*
    227 Or. App. 434, 206 P.3d 249 (2009)........................................................ 30

*Coulee Catholic Schools v. Labor & Indust. Review Comm'n Dept. of Workforce Dev.,*
    320 Wis.2d 275, 768 N.W.2d 868 (2009)........................................................ 10

*Francom v. Costco Wholesale,*
    98 Wash. App. 845, 991 P.2d 1182 (2000)........................................................ 33

*Henry v. Red Hill Evangelical Lutheran Church of Tustin,*
    201 Cal. App. 4th 1041, 134 Cal. Rptr.3d 15 (2011)........................................................ 15

*House v. Hicks,*
    218 Or. App. 348, 179 P.3d 730, 736 (2008)........................................................ 29, 30

*Korslund v. DynCorp Tri-Cities Services,*
    156 Wash.2d 168, 125 P.3d 119 (2005)........................................................ 33

*Noe v. Kaiser Foundation Hospitals,*
    248 Or. 420, 435 P.2d 306 (1967) ........................................................ 34

*Schmidt v. Pine Tree Land Dev.,*
    291 Or. 462, 631 P.2d 1373 (1981) ........................................................ 35

*Simpson v. Western Graphics Corp.,*
    53 Or. App. 205, 631 P.2d 805 (1981)........................................................ 32

*Thompson v. St. Regis Paper Co.,*
    102 Wash.2d 219, 685 P.2d 1081 (1984)........................................................ 32

*Yartzoff v. Democrat-Herald Publishing Co.,*
    281 Or. 651, 576 P.2d 356 (1978) ........................................................ 32

STATUTES AND LAWS

ORS 31.710........................................................ 34

ORS 31.730........................................................ 35

ORS 659A.006........................................................ 18, 23

PAGE vii – TABLE OF AUTHORITIES

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

ORS 659A.029 ................................................................................................................ 13

ORS 659A.030 ................................................................... 13, 17, 18, 22, 27, 28

42 U.S.C. § 1981a(b) ................................................................................. 33, 34

42 U.S.C. § 2000e(k) ....................................................................................... 13

42 U.S.C. § 2000e-1 .......................................................................... 18, 19, 21, 22

42 U.S.C. § 2000e-2 ........................................................... 13, 18, 21, 22, 25

U.S. Const. amend. I. ........................................................................................ 8


RULES

Fed. R. Civ. P. 56 ............................................................................................... 2

Fed. R. Civ. P. 8 ............................................................................................... 25


OTHER

*Restatement (Second) of Torts* § 46 .............................................................. 30

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

## LR 7-1 CERTIFICATE

Pursuant to Local Rule 7-1(a), defendant certifies that the parties conferred respecting this motion through their counsel, but were unable to resolve their disputes.

## LR 7-2 CERTIFICATE

This brief complies the with the applicable word-count limitation under LR 7-2(b) because it contains 9,700 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certifications of counsel.

## INTRODUCTION

The plaintiff, Coty Richardson ("Richardson"), was previously employed by the defendant, Northwest Christian University ("NCU"). She brings a number of federal and state claims related to her termination. On the federal side, she brings three Title VII claims: pregnancy discrimination, sex/gender discrimination, and religious discrimination. She brings nine pendent state law claims: pregnancy discrimination, sex/gender discrimination, religious discrimination, marital status discrimination, wrongful termination, repudiation of contract, intentional infliction of emotional distress, violation of various wage statutes, and "specific treatment in specific situations."

NCU moves for summary judgment on each of the aforesaid twelve claims for relief set forth in Richardson's Second Amended Complaint, Dkt. 21. It also moves for summary judgment with respect to Richardson's claim for damages in excess of the statutory limits

provided by Oregon law, as well as her request for punitive damages.

## STANDARDS

A court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The mere existence of a factual dispute between the parties is insufficient to defeat a motion for summary judgment. "Likewise, mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Community Colleg*e, 83 F.3d 1075, 1081–82 (9th Cir. 1996). Instead, to defeat a motion for summary judgment, the non-moving party must show that there is a genuine issue of fact, which means that the disputed evidence would be sufficient to support a reasonable jury verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245–52 (1986); *see United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) ("A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact."). As described below, there are no genuine issues of material fact which would allow the plaintiffs to proceed to trial, and the defendants are entitled to summary judgment as a matter of law on the plaintiffs' claims.

## BACKGROUND

NCU was founded in 1895, as Eugene Divinity School, to recruit, educate, and send out able Christian workers to preach the Word.  Vickers Decl. Ex. I, pg. 6.  The present NCU is the faithful descendent, heir, and expression of that pioneer conviction.  *Id.*

PAGE 2 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NCU was formed for religious educational purposes and it is tax exempt.  De Young Decl. ¶¶ 5-7, Exs. 1-3.  According to its Bylaws, NCU's purposes are, *inter alia*, to educate students "for a variety of vocations and professions, while grounding all of its degrees in biblical studies and Christian values[,]" "[t]o offer a Christian liberal arts education, integrating faith with learning," and "[t]o be a community for higher education in which faculty and students strive together for knowledge, understanding, and meaning in relation to the life of Jesus Christ." *Id.* at Ex. 3, pgs. 1-2.  NCU's educational philosophy reaffirms the Bylaws' purposes and further explains:

> The Christian quest for truth relates to all aspects of the liberal arts and sciences, including the humanities, social sciences, and physical and life sciences.  The institutional framework and objectives of this community recognize the individual and his/her need for biblical faith, intellectual development, personal effectiveness, and social awareness.

Vickers Decl. I pg. 10.  Faculty and staff are informed that teaching at NCU requires effective and meaningful integration of biblical studies with general studies.  *Id.*

NCU is closely affiliated with the Christian Churches (Disciples of Christ) and the Christian Churches/Churches of Christ.  *Id.* at pg. 9.  Significant representation on the Board of Trustees must come from these church bodies.  Theologically, NCU shares beliefs common to these churches, among them the belief that the Bible is an authoritative and guiding document. Vickers Decl. Ex. G, pgs. 8-9.  Accordingly, NCU states the following among its guiding affirmations:

> The Bible bears witness to God and Jesus Christ as God Incarnate. It is in the scriptures that one discovers the revealed will of God in creation, judgment, and gracious redemption.  The Bible serves as the authoritative witness to the life and teaching of Jesus, who is

PAGE 3 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

> himself the only authority for the Church.  *The biblical testimonies*
> *provide inspiration, wisdom, and essential teachings for Christian*
> *conduct, individually and corporately.*

*Id.* (emphasis added).

Given the mission and educational purposes of NCU, all employees are Christian and are obligated to support NCU's mission.  Vickers Decl. Ex. I, pg. 8.  Faculty members must express a maturing personal faith in Jesus Christ.  Vickers Decl. Ex. H, pg. 10.  Before an applicant is hired, he or she is required to meet with NCU's President, Dr. Joseph Womack, to discuss NCU's mission and the applicant's maturing Christian faith.  Vickers Decl. Ex. C, pgs. 2-3 (Womack Dep. 24:22-27:17).

NCU reinforces its mission of integrating Christian faith and learning in concrete ways. Faculty members must be involved in a local Christian church.  Vickers Decl. Ex. H, pg. 14. New academic faculty and staff participate in an orientation and reading group focused on integrating faith and learning.  Lindsay Decl. ¶ 3.  Richardson participated in this group in 2011. Vickers Decl. Ex. A, pg. 5 (CR Dep. 134:24-136:22).  Academic faculty and staff are evaluated regarding integration of faith and learning, attendance at weekly chapel, and their active involvement in a local church congregation.  *See, e.g.,* Vickers Decl. Ex. A, pgs. 6-12, 23-28; Ex. H, pgs. 16-18.  As NCU chemistry professor Dr. Heike McNeil explained, integrating faith and learning is a constant and consistent focus.  Vickers Decl. Ex. D pg. 2 (McNeil Dep. 53:1-13).

NCU does not require its students to be Christian because part of its mission is to evangelize.  Vickers Decl. Ex. C, pg. 4 (Womack Dep. 32:8-17).  However, 81% of undergraduate students (and 69% of all students) are Christian.  De Young Decl. ¶ 4.  Moreover, students must conform their behavior to Christian guidelines.  Vickers Decl. Ex. G, pg. 7.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

The curriculum at NCU is Christian focused.  All of its degrees are grounded in biblical studies and Christian values.  De Young Decl. ¶ 7, Ex. 3, pgs. 1-2.  All traditional undergraduate students are required to take 12 credits of Bible as part of the general education core.  Lindsay Decl. ¶ 5.  These courses are taught from a Christian perspective.  *Id.*  Traditional undergraduate students are also required to enroll in chapel, and they receive a "pass" or "fail" notation on their transcript with respect to chapel attendance.  To receive a "pass," a student must attend 20 chapel services per semester.  Vickers Decl. Ex. B, pg. 2 (Lindsay Dep. 42:21-24).  NCU's chapel services are explicitly Christian. Lindsay Decl. ¶ 4.  Regular and temporary full-time teaching faculty, part-time faculty, professional librarians, and administrative faculty are encouraged to attend chapel services.  Vickers Decl. Ex. I, pg. 12.

Plaintiff Coty Richardson applied for the position of part-time instructor of exercise science with NCU in 2011.  The position description explained NCU's mission, as well as its expectation that employees demonstrate a maturing Christian faith and integrate that faith by addressing it in the classroom.  Vickers Decl. Ex. A., pgs. 10-11.  Richardson submitted an application, cover letter, and a follow-up email.  *Id.* at pgs. 12, 13-14.  The cover letter and follow-up email make explicit references to Christianity and Richardson's desire to work for a Christian employer.  *Id.*  Later in the application process she submitted a statement of faith.  *Id.* at pg. 35.

Richardson's first interview was with Mick Bollenbaugh and Dr. McNeil.  Vickers Decl. Ex. A., pg. 2 (Richardson Dep. 89:3-11).  Following that interview she met with Dr. Dennis Lindsay, Vice President for Academic Affairs and Dean of Faculty.  *Id.*  Richardson and Dr. Lindsay discussed Richardson's faith statement.  *Id.* at pgs. 2-3, 17-21 (Richardson Dep. 92:21-

PAGE 5 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

93:15; 95:17-21).  Two weeks later, Richardson met with President Womack.  *Id.* at pg. 3 (Richardson Dep. 96:13-17).  The topic of their discussion also focused on NCU's mission and Richardson's faith statement.  *Id.* at pg. 3-4(Richardson Dep. 96:24-97:5).  NCU hired Richardson.  *Id.* at pg. 15.  She worked for the university during the 2011-2012, 2012-2013, 2013-2014, and 2014-2015 academic years.  *Id.* at pg. 15, 22, 29, 30.

Richardson received a contract for the 2015-2016 year as an assistant professor of exercise science. Vickers Decl. Ex. C, pg. 9.  She signed the contract on March 2, 2015.  *Id.* The contract provided that it could be "terminated for cause at any time, as specified in the faculty handbook at page 27[.]"  *Id.*   Page 27 of the Faculty Handbook permits termination for moral delinquency and/or lack of commitment to the university.  Vickers Decl. Ex. H, pg. 11.

On May 21, 2015, Richardson emailed Dr. Lindsay and Dr. McNeil advising them that she was expecting a baby in the fall.  Vickers Decl. Ex. A., pgs. 32-33.  Dr. Womack and Dr. Lindsay believed that Richardson was not married.  Vickers Decl. Ex. C, pg. 5, 6 (Womack Dep. 156:10-18; 179:10-180:1); Ex. B, pg. 4 (Lindsay Dep. 66:6-25).  Dr. Lindsay responded on May 22, 2015, advising that Richardson would need to touch base with Dr. McNeil.  Vickers Decl Ex. A, pg. 11.  Richardson and Dr. McNeil later met for tea.  They discussed coverage for Richardson's fall courses and Richardson's relationship with the father of her unborn child. Vickers Decl. Ex. A, pg. 6 (Richardson Dep. 171:11-172:25).

On June 24, 2015, Dr. Lindsay and Dr. McNeil met with Richardson.  Richardson confirmed in the meeting that she was not married but had been in a cohabitation relationship with the father of the baby over a period of years.  Dr. Lindsay reminded Richardson that sexual intimacy outside of marriage is incompatible with NCU's standards.  He indicated to Richardson

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

that she needed to make a decision and commitment as regards to the relationship with the father of the baby in light of NCU's standards.  He assured her that if she chose not to marry, NCU would continue to support her as a single mother "which they were under the impression they had been doing all along."  He also assured her that they would support her and celebrate with her if she and her partner chose to marry.  However, he advised her that he would not support her continued cohabitation.  Dr. Lindsay indicated that NCU had upheld the same standard with employees in the past.  Vickers Decl. Ex. B, pg. 8.

Dr. Lindsay followed up the meeting with a letter to Richardson, explaining that in order for her employment to continue, she was required to conform her lifestyle to reflect the faith based perspective of NCU, and informing her that if she chose to continue to cohabitate her employment would end.  Vickers Decl. Ex. A, pg. 34.  Richardson indicated that she did not want to discuss what she viewed as personal matters at work.  Dr. Lindsay reiterated that Richardson was required to adapt her lifestyle to reflect the faith based perspective of NCU.  Richardson chose not to engage in further discussions about conforming her lifestyle, and she would not commit to doing so.  NCU then terminated her employment.  Vickers Decl. Ex. B, pg. 9.

## ARGUMENT AND AUTHORITY

### I.    Ministerial Exception

Richardson's claims are barred by the so-called "ministerial exception" because she performed important religious functions, and because her claims would entangle the government with religious questions.  The First Amendment provides, in part, that "congress shall make no

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Accordingly, courts "have uniformly recognized the existence of a 'ministerial exception,' grounded in the First Amendment, that precludes application of [certain] legislation to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C.,* 132 S.Ct. 694, 705 (2012).

The "ministerial exception" is applied to allow religious organizations to shape their own faith and decide who is best suited to shepherd their believers. As the Supreme Court explained:

> The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or maintain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

*Id.* at 706. The ministerial exception bars employment claims brought by ministerial employees against their religious employers. *See id.* at 707-710.

Richardson was a ministerial employee because she was required to integrate her Christian faith into her teaching and to serve as a role model for her students. There is no rigid formula for deciding when an employee qualifies as a minister. *Hosanna-Tabor,* 132 S.Ct. at 707. However, the U.S. Supreme Court's ruling in *Hosanna-Tabor* provides some guidance.

PAGE 8 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

First, the exception is not limited to the head of a religious congregation.  *Id.*  Second, the

amount of time an individual spends on ministerial functions is not dispositive.  *Id.* at 709 ("The

issue before us, however, is not one that can be resolved by a stopwatch.")  Third, a finding that

an employee's job duties reflected a role in conveying a religious institution's message and

carrying out its mission is a factor that cuts in favor of finding that an employee is ministerial.

*Id.* at 708; *see also Clapper v. Chesapeake Conference of Seventh-Day Adventists,* 1998 WL

904528, *7 (4th Cir. 1998) (applying ministerial exception to elementary school teacher because

teachers were required "to exemplify the teachings of the Seventh-day Adventist faith in their

personal and professional lives[.]")

     NCU's expectations that its employees serve as ministers are well-explained in

Richardson's communication with NCU in 2011, when she hoped to secure employment.  There,

Richardson spoke in positive terms about the importance of integrating Christian faith with her

prospective job duties:

> I would be proud to be employed by a facility that honors Christian
> principles and values.  I believe that it's very important to keep the
> spiritual connection and support among students as well as faculty
> alike.  Being around other like minded Christians gives me
> strength and desire to grow and be the best I can be which will in
> effect prepare the students I teach to enter into the Exercise
> Science field with the faith and knowledge they need. I would like
> to be surrounded by like minded peers and employ Christian
> leadership principles in my place of work.

Vickers Decl. Ex. A., pg. 12.  She followed this up with a similar email to Dr. Lindsay:

> After meeting with you I am even more enthusiastic about
> becoming a part of the Exercise Science Department and team of
> educators at NCU who demonstrate a maturing Christian faith,
> ethical leadership, a strong moral compass, as well as prepare

PAGE 9 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

students to be competent leaders in the Exercise Science field.

*Id.* at pg. 13-14.

NCU exists to help its students integrate Christian faith into all areas of their lives, including "secular"[1] subjects. This faith integration goal is spelled out in NCU's Bylaws, Faculty Handbook, Faculty/Staff Handbook, and Student Handbook. It is also communicated to prospective employees and students.

NCU does not merely pay lip service to its goal of integrating Christian faith into a variety of subjects; it takes concrete steps to follow through on that goal. All faculty and staff must identify as Christian. Before an employee is hired, he or she must provide a written statement of faith and discuss the statement with the university's President. New academic faculty and staff receive training with respect to integrating faith and learning in the classroom. Employees are encouraged to attend Christian chapel services alongside their students. Academic faculty are evaluated with respect to how well they integrated faith into the classroom.

In sum, the raison d'etre of NCU is to teach its students a comprehensive worldview and to show them how Christian faith can inform all areas of study. To paraphrase a decision from the Supreme Court of Wisconsin, NCU respectfully submits that the courts should not "minimize…religion by calling a faith-centered [exercise science] class, for example, 'secular,' because it does not involve worship and prayer." *Coulee Catholic Schools v. Labor & Indust. Review Comm'n Dept. of Workforce Dev.,* 320 Wis.2d 275, 304, 768 N.W.2d 868 (2009). For faith-integrating religious institutions like NCU that view the duty of their professors to be

---

[1] NCU prefers not to use the term "secular." Vickers Decl. Ex. B, pgs. 2-3 (Lindsay Dep. 44:11-47:7)

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

identifying for students the integration of faith in each course's subject matter, the state should

not, through its courts, be in the business of telling these religious institutions that this duty is not

central enough to the mission of the religious organization to make the professor a ministerial

employee. *See New York v. Cathedral Aacad.,* 434 U.S. 125, 133 (1977) ("The prospect of

church and state litigating in court what does or does not have religious meaning touches on the

very core of the constitutional guarantee against religious establishment.")  Accordingly, the

ministerial exception should bar Richardson's claims.


## II.    Disparate Treatment Claims

Richardson has made seven disparate treatment claims.  Sec. Am. Compl. ¶¶ 36-40; 41-45;

46-50; 51-55; 77-81; 82-86; 87-91.  At the summary judgment stage, most of these claims are

resolved in the same basic way.

### A.  Burden Shifting Framework

To prevail on an employment discrimination claim, a plaintiff must prove by a

preponderance of the evidence that an employer was motivated by the plaintiff's protected status

(sex, for example) when it subjected the plaintiff to an alleged adverse employment action.  If a

plaintiff establishes that she was a member of a protected class and that an adverse employment

action was taken against her, she can survive summary judgment if she produces sufficient

"direct evidence" that her employer was motivated by discriminatory animus when it took the

alleged adverse employment action.  Direct evidence is evidence "which, if believed, proves the

fact of discriminatory animus without inference or presumption."  *Coghlan v. Am. Seafoods Co.

LLC,* 413 F.3d 1090, 1094-95 (9th Cir. 2005).

PAGE 11 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

If there is no direct evidence of discriminatory intent, courts considering an employer's motion for summary judgment proceed under the so-called "*McDonnell Douglas* burden shifting framework."[2] *See Diaz v. Eagle Produce Ltd. Partn.,* 521 F.3d 1201, 1207 (9th Cir. 2008). Under this framework, a plaintiff must first make out a *prima facie* case.  To make out a *prima facie* case for employment discrimination, a plaintiff must generally establish that:  1) she belongs to a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) similarly situated persons who are outside her protected class were treated more favorably.  *Aragon v. Republic Silver State Disposal, Inc.,* 292 F.3d 654, 658 (9th Cir. 2002) (en banc).

If a plaintiff establishes a *prima facie* case, she creates a presumption that the adverse employment action was taken with a discriminatory intent.  *Coleman v. Quaker Oats,* 232 F.3d 1271, 1281 (9th Cir. 2000).  The burden of production – but not the burden of persuasion – then shifts to the employer "to articulate some legitimate non-discriminatory reason" for the challenged employment decision.  *Id.*  If the employer successfully rebuts the plaintiff's *prima facie* case, then the "presumption of discrimination drops out of the picture."  *Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018, 1028 (9th Cir. 2006).

The plaintiff can then only prevail if she can produce sufficient circumstantial evidence that the employer's articulated non-discriminatory reasons were merely pre-textual, that they were not the true reasons.  *See Coleman,* 232 F.3d at 1281. A plaintiff generally shows pretext through two kinds of circumstantial evidence.  The first is evidence that the employer's

---

[2] Though Oregon state courts have rejected the *McDonnell Douglas* burden-shifting framework, Oregon federal courts must use it regardless of whether they are considering an employment claim made under state law.  *Dawson v. Entek Intern.,* 630 F.3d 928, 935 (9th Cir. 2011).

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

"proffered explanation [for the adverse employment action] is unworthy of credence because it is internally inconsistent or otherwise not believable." *Noyes v. Kelly Servs.,* 488 F.3d 1163, 1170 (9th Cir. 2007). The second is evidence which shows that the employer held discriminatory animus, and therefore that such animus "likely motivated the employer." *Id.* If a plaintiff can demonstrate pretext in either of these ways, she creates a question of fact about whether an employer took a challenged adverse employment action for an unlawful reason. "[W]hen the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment." *Coghlan*, 413 F.3d at 1095-96. And to be "specific and substantial," evidence must at least be more than a "minimal" addition to that which is necessary to establish a *prima facie* case. *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir. 1994).

### B. Pregnancy/Sex Discrimination

Richardson's first and tenth claims for relief allege pregnancy discrimination, ¶¶ 36-40 (ORS 659A.029 and .030); ¶¶ 77-81 (Title VII), and her second and eleventh claims allege sex discrimination. ¶¶ 41-45 (ORS 659A.030); ¶¶ 82-86 (Title VII).

Both Title VII and Oregon law prohibit discrimination on the basis of sex. 42 U.S.C. §2000e-2(a); ORS 659A.030. Pregnancy discrimination is a defined subset of sex discrimination. *See, e.g.,* 42 U.S.C. §2000e(k); ORS 659A.029; *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.,*462 U.S. 669, 684 (1983). Thus, plaintiff's claims for pregnancy discrimination are essentially claims for sex discrimination, and the legal analysis for both claims is the same. Likewise, claims brought under Title VII and ORS 659A.030 are analyzed together. *See Dawson,* 630 F.3d at 935 (9th Cir. 2011).

PAGE 13 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### a.  prima facie case

In order to establish pregnancy or sex discrimination, Richardson must establish:  (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and, (4) similarly situated employees outside her protected class were treated more favorably.  *Aragon,* 292 F.3d at 658.  Here, there is no evidence establishing the fourth element.

Richardson must prove that similarly situated individuals outside of her protected class were treated more favorably.  *Id.*  To establish that other employees are "similarly situated," "the individual [ ] seeking relief must…demonstrate that [she is] similarly situated to those employees in all material respects."  *Moran v. Selig,* 447 F.3d 748, 755 (9th Cir. 2006).  Here, to satisfy her burden, Richardson must prove that non-pregnant and/or male employee(s) who violated NCU policies and refused to change her or his behavior to conform to NCU's expectations (or even consider doing so) remained employed by NCU.

NCU has consistently upheld its standards with its employees. On two occasions, NCU has had specific discussions with male employees regarding cohabitation.  It terminated one male employee who engaged in sexual relations outside of marriage.  Vickers Decl. Ex. C, pgs. 7-8 (Womack Dep. 216:14-217:4) On another occasion, NCU learned that a male faculty member was cohabitating with someone who was not his wife.  Dr. Lindsay met with this employee and insisted that he discontinue cohabitating.  The employee complied, and he remained employed. Dr. Lindsay testified that the discussion he had with this employee was similar in nature to the discussion he had with Richardson.  Vickers Decl. Ex. B, pg. 5 (Lindsay Dep. 114:1-116:9)

NCU has upheld its cohabitation policy with two female employees, including

PAGE 14 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Richardson.  When it learned that a female administrative employee was cohabitating with

someone who was not her husband, Dr. Lindsay met with the female employee and insisted that

she discontinue cohabitating.  That female employee discontinued the cohabitation relationship

and was not terminated because of it. *Id.* at pg. 6 (Lindsay Dep. 119:8-120:11)

### b.   legitimate non-discriminatory reason

Even if Richardson can establish her *prima facie* case, NCU has a legitimate, non-

discriminatory reason for terminating her:  NCU has a policy, based in the Christian ethic and its

understanding of Holy Scripture, prohibiting cohabitation and sexual relations outside the bonds

of marriage.  Vickers Decl. Ex. E, pg. 2; *see, e.g., Boyd v. Harding Academy of Memphis, Inc.,*

88 F.3d 410, 414-15 (6th Cir. 1996) (policy prohibiting teachers from engaging in sex outside of

marriage is non-discriminatory); *Henry v. Red Hill Evangelical Lutheran Church of Tustin,* 201

Cal. App. 4th 1041, 1052 (2011) (finding policy against cohabitation did not violate Title VII's

prohibitions on sex or pregnancy discrimination).  Richardson violated that policy, but she was

not terminated for doing so.  Rather, she was terminated for expressing an unwillingness to

discontinue the cohabitation lifestyle.  Vickers Decl. Ex. E, pg. 2.

### c.   pretext

The burden now shifts to Richardson to produce evidence that NCU's given reason was

pre-textual.  NCU notes, however, that the Establishment Clause of the First Amendment

prohibits her from attempting to prove pretext by challenging the reasonableness or validity of

the religious justification NCU has offered.  Ordinarily, when considering pretext, the court and

jury may consider the genuineness of the employer's putative non-discriminatory purpose by

arguing that the stated purpose is implausible, absurd, or unworthy of credence.  *See Chuang v.*

PAGE 15 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Univ. of Calif. Davis Bd. of Trustees,* 225 F.3d 1115, 1124 (9th Cir. 2000)(quoting *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

But, the Establishment Clause prohibits government entanglement with religion.  In the Title VII context, this means that courts and juries cannot decide the truth or validity of a proffered legitimate religious reason for a challenged adverse employment action.  *Rweyemamu v. Cote,* 520 F.3d 198, 207 (2d Cir. 2008) ("[W]e will not subject to examination the genuineness of a proffered religious reason for an employment action."); *DeMarco v. Holy Cross High School,* 4 F.3d 166, 171 (2d Cir. 1993) ("A fact-finder will necessarily have to presume that an asserted religious motive is plausible in the sense that it is reasonably or validly held").

### d.  facial discrimination

In addition to intentional disparate treatment discrimination Richardson alleges that NCU has a facially discriminatory policy.  Sec. Am. Compl. ¶¶ 42, 82.  Facial discrimination occurs when an employer adopts a policy that explicitly treats some employees differently from others on the basis of race, religion, national origin, or sex (including pregnancy).

A plaintiff cannot prove facial sex or pregnancy discrimination unless the challenged policy explicitly singles out pregnant women on the basis of their pregnancy.  *See Young v. United Parcel Service, Inc.,* 135 S. Ct. 1338, 1354 (2015) (citation omitted) (direct evidence is "a workplace policy, practice, or decision [that] relies expressly on a protected characteristic"); *Arigbon v. Multnomah Cnty.,* 2010 WL 2038839, *11 (D. Or. May 20, 2010) (county labor agreement treated pregnant women the same as other employees absent from the workplace).

NCU expects its employees to demonstrate a maturing Christian faith and to support its mission.  Thus, it has a policy, based in the Christian ethic and NCU's understanding of Holy

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

Scripture, prohibiting cohabitation and sexual relations outside of the bonds of marriage. This policy is not facially discriminatory; it applies equally to female and male employees and pregnant and non-pregnant employees.

### C. Marital Status Discrimination

Richardson's third claim for relief is for marital status discrimination under Oregon law. Sec. Am. Compl. ¶¶ 46-49. To establish her claim, Richardson must prove that NCU terminated her because of her marital status using the same burden-shifting framework discussed above in section II. A. That is, to meet her burden, Richardson must establish (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and, (4) similarly situated employees outside her protected class were treated more favorably.

NCU's response to this claim is the same as its response to Richardson's pregnancy and sex/gender discrimination claims. Richardson cannot establish that similarly situated employees outside her protected class were treated more favorably. NCU employs married and unmarried men and women, and holds them to the same standards. But even if she can, NCU had a legitimate, non-discriminatory reason for terminating her employment: Richardson expressed an unwillingness to conform her lifestyle to NCU's faith-based expectations.

### D. Religious Discrimination

Richardson's fourth and twelfth claims for relief allege religious discrimination. Sec. Am. Comp. ¶¶ 51-55 (ORS 659A.030); 87-91 (Title VII). This claim is based on the allegation that she was terminated because of her own Christian religious views. *See id.*

To avoid offending the First Amendment's religion clauses, Title VII contains three

PAGE 17 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

exemptions with respect to its prohibitions against religion-based discrimination: (1) §2000e-1(a) provides that the equal employment provisions do not apply to employment by a "religious corporation, association, educational institution…with respect to the employment of individuals of a particular religion" to carry on its activities; (2) §2000e-2(e)(2) provides that "it shall not be an unlawful employment practice for a…college [or] university…to hire and employ employees of a particular religion…if the curriculum of such school…is directed toward the propagation of a particular religion."; and (3) §2000e-2(e)(1) provides that "it shall not be an unlawful employment practice for an employer to hire and employ employees…on the basis of [ ] religion" if religion is "a bona fide occupational qualification ["BFOQ"] reasonably necessary to the normal operation of that particular business or enterprise[.]"  Oregon law also contains the BFOQ exemption.  ORS 659A.030(1)(a).  Additionally, Oregon law permits religious schools to prefer employees of their own religion or sect when making employment decisions.  ORS 659A.006(4).  These exemptions bar Richardson's religious discrimination claims.

### a. religious educational institution

Whether an organization is exempt under §2000e-1(a) depends on "whether the 'general picture' of [an] institution is primarily religious or secular." *E.E.O.C. v. Townley Eng'g & Mfg. Co.,* 859 F.2d 610, 618 n. 14 (9th Cir. 1988).  The court weighs "all significant religious and secular characteristics" "to determine whether the [institution]'s purpose and character are primarily religious." *See id.* at 618.

The Ninth Circuit has previously examined the exemption with regard to a K-12 school by considering the school's: 1) ownership and affiliation; 2) purpose; 3) faculty; 4) student body; 5) student activities, and 6) curriculum. *E.E.O.C. v. Kamehameha Schools/Bishop Estate,* 990

PAGE 18 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

F.2d 458, 461-62 (9th Cir. 1993).  More recently, the Ninth Circuit held that a faith-based

corporation is exempt under this statute if it can establish it "1) is organized for a self-identified

religious purpose (as identified by Articles of Incorporation or similar foundational documents),

2) is engaged in activity consistent with, and in furtherance of, those religious purposes, and 3)

holds itself out to the public as religious." [3]  *Spencer v. World Vision, Inc.,* 633 F.3d 723, 734

(9th Cir. 2011) (per curiam) (citation omitted).  NCU qualifies for the exemption under

*Kamehameha, World Vision,* or a combination thereof.

   *Ownership and Affiliation*:  NCU is a non-profit organization.  It was founded in 1895 as

a divinity school, sponsored and supported by the Christian Churches (Disciples of Christ) of

Oregon.  NCU is closely affiliated with the Christian Churches (Disciples of Christ) and the

Christian Churches/Churches of Christ.  NCU is a member of the Council for Christian Colleges

and Universities and the Association of Business Administrators of Christian Colleges.  De

Young Decl. ¶ 3.  NCU is undoubtedly a Christian university.  *See World Vision,* 633 F.3d at 732

(noting that §2000e-1(a) should apply to entities organized for religious purposes and that have

religious tenets, even absent affiliation with a particular religious congregation).

   *Purpose*:  NCU is a 501(c)(3) nonprofit.  *World Vision,* 633 F.3d at 735 ("nonprofit status

'makes colorable [World Vision's] claim that it is not purely secular in orientation.")  The

---

[3] In *World Vision,* a split panel of the Ninth Circuit upheld the grant of summary judgment by the
district court, holding that World Vision qualified for the religious organization exemption under
Title VII.  Judge O'Scannlain articulated the three-part test cited above.  Judge Kleinfeld wrote a
concurring opinion.  He agreed with Judge O'Scannlain's ultimate finding, but disagreed with
the test Judge O'Scannlain applied, believing it to be "too inclusive."  He proposed adding a
fourth factor to the test, which would require that the entity "does not engage primarily or
substantially in the exchange of goods or services for money beyond nominal amounts."  Judge
Kleinfeld specifically stated, however, that this fourth element would not apply to religious
schools.  *Id.* at 747-48.

PAGE 19 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

purpose of NCU is, and has been for years, religious.  This religious purpose is professed in

NCU's Bylaws, mission statement, faculty handbook, and student handbook.

*Faculty*:  NCU adheres to a Christian-only requirement for faculty and staff.  All

prospective faculty and staff must submit a statement of Christian faith with their application,

and they must meet with NCU's President before they are hired to discuss their maturing

Christian faith.  Faculty must engage in a local Christian church congregation.  *Cf. Kamehameha,*

900 F.2d at 462 ("The Schools have never required their teachers to maintain active membership

in a church, and do not inquire into the substance of a teacher's beliefs or the extent to which

teachers integrate those beliefs into their work.").  All NCU employees are encouraged to attend

chapel.   Faculty are required to integrate Christian faith into their teaching.

*Student Body*:  81% of traditional undergraduate students are Christian, and 69% of all

students are Christian.  NCU does not consider the faith of its applicants because part of its

mission is to evangelize.

*Student Activities*:  All traditional undergraduate students are required to attend explicitly

Christian chapel worship services.

*Curriculum*:  NCU offers a variety of courses, but all of its disciplines are grounded in

the Christian faith.  Moreover, all traditional undergraduate students are required to take 12

credits of Bible as part of the general education core.  These courses are taught from the

Christian perspective and are designed to enable NCU students to engage the Bible as Holy

Scripture in a way that promotes integration of faith in all aspects of study and individual

vocation.  Lindsay Decl. ¶ 5.

*Holds Self Out as Religious*:  "[Northwest Christian University] makes no effort to

PAGE 20 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

disguise its Christian nature." *World Vision,* 633 F.3d at 738. "At the most basic level, [NCU]'s

logo is a stylized Christian cross, and religious artwork and texts are displayed throughout the

[university's] campus." *See id.*; Lindsay Decl. ¶¶6-7. "While prospective employees are not

required to belong to a particular denomination, applicants are specifically requested to describe

their 'relationship with Jesus Christ.'" *Id.* at 739.

Based on the foregoing it is clear that NCU is organized primarily for religious purposes.

It is a non-profit university designed to educate students to integrate Christianity into all aspects

of life. NCU's mission is evidenced in all of its guiding documents. NCU explicitly and

intentionally holds itself out to the public as a Christian educational institution. Accordingly,

§2000e-1(a) bars Richardson's Title VII claim for religious discrimination.

### b. religious curriculum

NCU is also exempt from Richardson's religious discrimination claim under the religious

curriculum exemption. 42 U.S.C. §2000e-2(e)(2). This exemption applies to educational

institutions whose curriculum – required coursework and school activities – spreads or instills

religious values. *See Kamehameha,* 990 F.2d at 464. The inquiry is fact-based and examines

"the extent to which a school's curriculum reflects an effort to spread and inculcate particular

religious beliefs." *Id.* As discussed above at length, NCU clearly attempts to propagate the

Christian religion in everything it does. *Cf. id.* (declining to apply religious curriculum

exemption where schools expressly disclaimed attempt to convert non-Protestant students).

Therefore, NCU is exempt from Richardson's Title VII religious discrimination claim.

### c. BFOQ

Finally, Title VII does not apply to religious discrimination claims if a particular religion

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

is a bona fide occupational requirement ("BFOQ") for teaching at a religious educational

institution.  *See* 42 U.S.C. § 2000e-2(e)(1); ORS 659A.030(1)(a).  To be a BFOQ, a job

qualification must "affect an employee's ability to do the job," and "must relate to the 'essence'

or to the 'central mission of the employer's business.'"  *U.A.W. v. Johnson Controls, Inc.,* 499

U.S. 187, 202-203 (1991).  There are few cases where a court is presented with a defendant who

does not qualify for an exemption under §2000e-1(a) or §2000e-2(e)(2), but nevertheless seeks to

assert religious affiliation as a BFOQ.  That said, principles extracted from *Kamehameha* are

instructive.

        In *Kamehameha,* the Ninth Circuit decided that the schools were not entitled to any Title

VII exemptions because they had become secular in nature and no recent effort was made to

incorporate the content of Protestantism into classes.  The court held that the BFOQ defense was

inapplicable because:

> There is nothing to suggest that adherence to the Protestant faith is
> essential to the performance of this job. … [The schools] also
> expect teachers to serve as role models and provide general
> instructions in morals … but do not inquire whether the teachers
> integrate Protestantism into their teaching.  The Schools identify
> no skills or aptitudes which a person affiliated with the Protestant
> tradition possesses as a class that are essential to the performance
> of those job functions.  Moreover, the record indicates the
> Protestant affiliation requirement is nominal – if a prospective
> teacher represents he or she is Protestant, the prospective teacher is
> presumed able to lead prayers and serve as a moral role model.

*Id.*

        For exactly these reasons, however, *Kamehameha* is factually distinguishable from the

case at bar.  Here, as evidenced by NCU's Bylaws, mission statement, and various

communications to faculty, staff, and students, adherence to and practice of Christian faith is

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

considered essential to the faculty position.  Whereas the schools in *Kamehameha* had shifted

from a predominately religious to a predominately secular purpose, NCU has remained

committed to its mission of integrating faith into all of its subjects, even those subjects outsiders

might consider "secular."   In conclusion, while it is clear that the legal reasoning of

*Kamehameha* is germane, the factual distinction here compels a different result.  NCU is exempt

from Richardson's religious discrimination claims under Title VII and Oregon law because

adherence to Christianity is a BFOQ for NCU faculty.

### d.    Oregon law exemption

Similar to Title VII, Oregon permits religious schools to prefer employees on the basis of

religion in certain situations.  ORS 659A.006(4) provides:

> It is not an unlawful employment practice for a…religious
> institution, including but not limited to a school…to prefer an
> employee…of one religious sect or persuasion over another if: (a)
> [t]he religious sect or persuasion to which the employee or
> applicant belongs is the same as that of the…institution; (b) [i]n
> the opinion of the…institution, the preference will best serve the
> purposes of the…institution; and (c) [t]he employment involved
> is…related to the primary purposes of the …institution and is not
> connected with a commercial or business activity that has no
> necessary relationship to the…institution.

NCU is a Christian religious institution.  It is permitted to prefer employees who adhere

accordingly.  In NCU's opinion, that preference best serves its purposes.  The position involved

in this case, a faculty position, relates to the primary religious educational purposes of NCU; it is

not a position that has "no necessary relationship to" NCU's mission.  Richardson's religious

discrimination claim under Oregon law is therefore precluded by ORS 659A.006(4).

///

Page 23 – Defendant's Motion for Summary Judgment

### III.    Disparate Impact Claims

Richardson's pregnancy, sex/gender, religious, and marital status discrimination claims are each ostensibly brought on a "disparate impact" theory under Title VII and Oregon law.

In bringing a disparate impact claim, a plaintiff alleges that an employer's facially neutral employment policy of general applicability (like a standardized test given to job applicants) has a disproportionate, adverse effect on those outside of a certain protected class as compared to those within a protected class.  The purpose of disparate impact claims is to "remov[e] artificial, arbitrary, and unnecessary barriers," not to invalidate an employer's legitimate policies.  *See Griggs v. Duke Power Co.,* 401 U.S. 424, 431 (1971).

To establish a prima facie case of disparate impact discrimination, a plaintiff must 1) identify a facially neutral policy or practice, 2) demonstrate a disparity exists, and 3) establish a causal relationship between the two.  *See Pena v. Comm. Service Agency of Lane Cnty.,* 2010 WL 3419520, *10 (D. Or. Aug. 30, 2010).  The causal relationship is established through statistical evidence which compares the effects of a neutral policy on those within one protected group of which the plaintiff is a member to those outside that protected group.  Where the statistical evidence fails to show that a policy has a disparate impact between the groups – or where there is no such evidence – the disparate impact claim fails.  *See, e.g., John v. Georgia-P. Corp.,* 697 F. Supp. 1156, 1159 (D. Or. 1988) (dismissing disparate impact age discrimination claim under the ADEA where the plaintiffs provided no evidence of how a policy affected those under 40); *Pena,* 2010 WL 3419250 at *11 (dismissing disparate impact race claim where plaintiff did not produce statistical evidence showing that the employer's policy had a disparate impact on Hispanics).

PAGE 24 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

If a plaintiff makes out a prima facie case of disparate impact discrimination, an employer can avoid liability if it proves that (a) the specific employment practice does not cause a disparate impact, or (b) that its employment policy is job related and consistent with business necessity.  42 U.S.C. §2000e-2(K)(1)(A).

## A.  Pleading Requirements

Federal Rule of Civil Procedure 8(a) requires that a complaint include the necessary factual allegations to state any claim asserted.  This means that a complaint must include the "necessary factual averments…with respect to each material element of the underlying legal theory."  *Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006).  Where a plaintiff's complaint fails to include such factual averments, a plaintiff cannot "flesh out inadequate pleadings," *id.,* by "rais[ing] allegations for the first time in [his] response to a summary judgment motion," *Karnes v. Regence Bluecross Blueshield of Or.,* 2011 WL 1402825 at *1 (D. Or. Apr. 12, 2011) (Haggerty, J.); *see Navajo Nation v. U.S. Forest Serv.,* 535 F.3d 1058, 1079-80 (9th Cir. 2008).

A plaintiff alleging a disparate impact claim must "point to a defendant's policy or policies causing" a disparity.  *See Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project, Inc.,* 135 S. Ct. 2507, 2523 (2015).  Moreover, a plaintiff must plead facts establishing a causal connection:  "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."  *Id.*  Here, Richardson's disparate impact claims must all fail because she did not plead a facially neutral policy or policies that allegedly caused a disparate impact.  Likewise, she did not plead a causal link between any such policy and a statistical disparity.  *See*

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*id.* Richardson's disparate impact claims should be dismissed.

### B.  Failure to Exhaust

A plaintiff alleging federal employment discrimination claims must exhaust her administrative remedies.  *E.E.O.C. v. Farmer Bros. Co.,* 31 F.3d 891, 898 (9th Cir. 1994). "[T]he jurisdictional scope of a Title VII claimant's court action depends both on the EEOC charge and the EEOC investigation."  Disparate treatment and disparate impact claims are separate and distinct.  *See Raytheon Co. v. Hernandez,* 540 U.S. 44, 52-53 (2003).  An administrative charge that only alleges a discrimination claim based on disparate treatment is insufficient to exhaust a claim for disparate impact – and vice-versa.  *See Brown v. Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d 726, 730 (9th Cir. 1983) (disparate impact charge did not encompass disparate treatment claim); *Donaldson v. Microsoft Corp.,* 205 F.R.D. 558, 571 (W.D. Wash. 2001) (disparate treatment charge did not exhaust disparate impact claim).

In August 2015, Richardson filed a charge of discrimination with the United States Equal Opportunity Commission ("EEOC").  Vickers Decl. Ex. F.  Her EEOC complaint neither mentions nor contains facts from which it can be understood that she intended to bring a disparate impact claims.  Therefore, her Title VII disparate impact claims must be dismissed because she failed to exhaust her administrative remedies.

### C.  Merits

It is difficult to respond to the merits of Richardson's disparate impact claims because they are not well-defined in the complaint.  In any event, there is no evidence that NCU maintains a policy that has a disparate impact on any protected class.

To the extent she could establish a claim of disparate impact on the basis of religion it

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

would fail for the same reasons her disparate treatment claims brought on that theory fail. *See* Section II. D., *supra.*

### IV.     First Amendment

Religious organizations are permitted to control their internal affairs. *Watson v. Jones,* 80 U.S. 679, 727-29 (1872). Courts cannot reverse religious tribunals on "questions of discipline, or of faith, or ecclesiastical rule, custom, or law." *Id.* at 727. They cannot "resolve a religious controversy." *Jones v. Wolf,* 443 U.S. 595, 604 (1979). Religious institutions have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Hosanna-Tabor,* 132 S. Ct. 694, 704 (2012) (quoting *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94 (1952)).

At various points in her complaint, Richardson appears to suggest that this Court should enforce Title VII and Oregon anti-discrimination law in such a way that would completely invalidate NCU's cohabitation policy, and require NCU to permit conduct disapproved of by NCU for religious reasons. Such a result would impede on NCU's right to decide, free from state interference, matters of Christian faith.

### V.     Wrongful Discharge

Richardson's fifth claim for relief is for wrongful termination in violation of public policy. This claim arises from the same conduct alleged in her first four claims for relief predicated on ORS 659A.030. *See* Sec. Amend. Compl. ¶¶ 56-59. A plaintiff cannot bring a common law claim for wrongful discharge if: "(1) an existing remedy adequately protects the

PAGE 27 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that remedy to be adequate)." *Lindsay v. People's Utility District,* 140 F.Supp. 3d 1077, 1095 (D. Or. 2015) citing *Arnold v. Pfizer, Inc.,* 970 F. Supp.2d 1106, 1145-46 (D. Or. 2013).

Here, Richardson has brought numerous claims under ORS 659A.030. "For actions alleging violations of Section 659A.030, a court 'may award equitable relief, compensatory damages, and punitive damages…[which] are the same remedies available for the tort of wrongful discharge.'" *Shaw v. R.U. One Corp.,* 822 F.Supp.2d 1094, 1098 (D. Or. 2011) citing *Ryan v. HSC Real Estate,* 2010 WL 3222443, *3 (D. Or. Aug. 11, 2010). Accordingly, Richardson's wrongful discharge claim is preempted and must be dismissed. *See, e.g.,* at 1098-99; *Lovell v. Sky Chefs Inc.,* 2015 WL 4488026, *3 (D. Or. July 22, 2015) (so holding and surveying District of Oregon cases).

## VI.    Wage Claim

Richardson's eighth claim is for a violation of various wage statutes. Sec. Am. Compl. ¶¶ 69-71. She alleges that NCU repudiated its 2015-2016 employment contract with her, and that the compensation she was set to receive under the 2015-2016 contract is "wages." *Id.* She further alleges that under Oregon's wage statutes she is entitled to her unpaid wages, plus a month's salary and attorneys' fees and costs. *Id.*

"Wages" as defined in Oregon's wage collection statutes means compensation for work actually performed. *Jones v. Northwest Telemarketing, Inc.,* 2000 WL 568352, *3 (D. Or. April 7, 2000) citing *Bruce v. S.M. Motor Co., Inc.,* 81 Or. App. 227, 724 P.2d 911 (1986). Thus,

PAGE 28 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

when an employee brings suit to recover damages related to breach of an employment contract, she is not entitled to recover under Oregon's wage statutes unless she recovers damages for services rendered. *Bruce,* 81 Or. App. at 229-30, 724 P.2d 911.

Here, Richardson seeks to recover damages based on an employment contract for the 2015-2016 academic year. The contract was set to commence August 15, 2015. Womack Ex. 7. NCU terminated Richardson's employment on July 22, 2015. She concedes that she did not perform any work for NCU under the 2015-2016 contract. Vickers Decl. Ex. A, pg. 8 (Richardson Dep. 216:5-18). Thus, she is not entitled to prevail under Oregon's wage collection statutes.


## VII.    Intentional Infliction of Emotional Distress

Richardson's seventh claim is for intentional infliction of emotional distress. Sec. Am. Compl. ¶¶ 65-71. To prevail on an IIED claim, a plaintiff must prove that: 1) the defendant intended to cause the plaintiff severe emotional distress or knew with substantial certainty that its conduct would cause such distress; 2) the defendant engaged in outrageous conduct, which conduct is extraordinarily beyond the bounds of socially tolerable behavior; and 3) the defendant's conduct in fact caused the plaintiff severe emotional distress. *House v. Hicks,* 218 Or. App. 348, 357-58, 179 P.3d 730 (2008). An IIED claim largely turns on the second element – whether a defendant's conduct was sufficiently extreme and outrageous. *Id.* While "the inquiry is fact-specific, the question of whether the defendant's conduct exceeded the farthest reaches of socially tolerable behavior is, initially, a question of law" for the court. *Gordon v. Kleinfelder W., Inc.,* 2012 WL 844200, *14 (D. Or. Mar. 12, 2012) (citation and internal

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

quotations omitted).

Insults, rude behavior, or harsh or intimidating words ordinarily do no result in liability for damages even when intended to cause distress. *Brewer v. Erwin,* 287 Or. 435, 457-58, 600 P.2d 398 (1979). Rather, liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *House,* 218 Or. App. at 358 (quoting *Restatement (Second) of Torts* § 46 cmt. D. (1965)). In the employment context, the only IIED claims either the Oregon Court of Appeals or the Supreme Court have found to have conduct that was sufficiently "extreme and outrageous" were claims in which the "employer engaged in conduct that was not only aggravating, insensitive, petty, irritating, perhaps unlawful, and mean – it is also contained some further and more serious aspect," like unwanted physical contact of a violent or sexual nature, or credible threats of contact; the use of derogatory racial, gender, or ethnic slurs, "usually accompanied by some aggravating circumstance"; exposing the plaintiff to "actual physical danger" ' and the like. *Clemente v. State,* 227 Or. App. 434, 442-43, 206 P.3d 249 (2009).

In this case there is no evidence to suggest that NCU intended to inflict severe emotional distress on Richardson, that Richardson suffers from severe emotional distress resulting from her interactions with NCU, or that the bounds of socially tolerable conduct have been transgressed. NCU terminated Richardson's employment contract. "Even if this decision had been based on discriminatory animus" which NCU vehemently disputes "'[w]rongfully motivated discharge alone is insufficient to establish the intolerable element of the IIED tort.'" *Noga v. Costco Wholesale Corp.,* 583 F.Supp.2d 1245, 1264 (D. Or. 2008) quoting *Laird v. Marion Cnty.,* 2005

PAGE 30 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WL 1669828, *9 (D. Or. July 14, 2005).

### VIII.   Breach of Contract

Richardson's sixth claim for relief is for repudiation or breach of contract.  *See* Sec. Am. Compl. ¶¶ 60-64.  She alleges that she had a contract with NCU which provided that the parties had to abide by the Faculty Handbook, which stated among other things, the university's anti-discrimination policy.  Richardson contends NCU terminated her in violation of this policy, thus breaching her contract.  *See id.*  Richardson's contract claim fails because NCU did not violate its anti-discrimination policy.

NCU's Staff/Faculty Personnel Handbook provides that it is "informational and not to be construed as a contract for employment, express or implied, or as a guarantee of the benefits or policies stated herein."  Vickers Decl. Ex. I, pg. 4.  Within that document NCU states it its policy "is not to discriminate against employees on the basis of…sex [and] marital status…to the extent *prohibited by applicable non-discrimination laws*[.]"  Vickers Decl. Ex. I, pg. 11. (emphasis added).   For the reasons discussed herein, NCU did not discriminate against Richardson on the basis of sex or marital status; therefore, even if this provision of the Staff/Faculty Personnel Handbook could be considered a contract, NCU did not breach it.

Richardson and NCU had a contract for the 2015-2016.  It provided that "[e]mployment under this contract may be terminated for cause at any time, as specified in the Faculty Handbook on page 27[.]"  Vickers Decl. Ex. C, pg. 9.  Page 27 of the Faculty Handbook, in turn, provides that "[a]dequate cause for termination includes, but is not limited to, professional incompetence, failure to meet performance responsibilities, moral delinquency, or lack of

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

commitment to the University."  Vickers Decl. Ex. H, pg. 11.  Where an employment contract

states that an employee will only be terminated "for cause," an employer cannot arbitrarily

discharge an employee.  *Simpson v. Western Graphics Corp*., 53 Or. App. 205, 208-209, 631

P.2d 805 (1981) *aff'd*, 293 Or. 66.  "To satisfy this standard, the court need only find that there

was substantial evidence to support the employer's decision and that the employer believed that

evidence and acted in good faith in discharging the worker." *Hutton v. Jackson Cnty,* 2010 WL

4906205, *13 (D. Or. Nov. 23, 2010) citing *Simpson,* 53 Or. App. at 211.  Here, there is ample

evidence that, according to what Dr. Lindsay knew, Richardson would not commit to upholding

NCU's mission and standards.  NCU accordingly had just cause to terminate her contract.


## IX.      Specific Treatment in Specific Situations

Richardson's ninth claim for relief is titled "Violation of Specific Treatment in Specific

Situations."  Sec. Am. Compl. ¶¶ 72-76.  She contends that certain statements in NCU's Faculty

Handbook – particularly the non-discrimination provisions and the provision relating to

commencement of a faculty review panel prior to termination – amounted to promises for

"specific treatment in specific situations."  *See id.*

Oregon law does not recognize a cause of action for "specific treatment in specific

situations."  Instead, in Oregon, statements in personnel manuals and employee handbooks *can*

create implied contracts.  *See Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or. 651, 576

P.2d 356 (1978).  Washington law recognizes a cause of action called "specific treatment in

specific situations" based on employee manuals or handbooks.  *Thompson v. St. Regis Paper

Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984).  This claim is *not* contractual; it "instead rests on a

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

justifiable reliance theory." *Korslund v. DynCorp Tri-Cities Services,* 156 Wash.2d 168, 185, 125 P.3d 119 ( 2005) (citations omitted).  To prevail, a plaintiff must prove (1) statements in an employee manual or handbook or similar documents amount to a promise of specific treatment in a specific situation; (2) the employee justifiably relied on the promise; (3) the promise was breached causing damage. *See id.* at 184-85.

Even presuming Oregon law would recognize this cause of action, Richardson cannot present evidence to support it.  First, she cannot prove that NCU's statements with respect to discrimination amounted to a promise of specific treatment in specific situations.  NCU's statements merely state a policy that it will comply with anti-discrimination law to the extent it is required to do so.  A promise to abide by applicable employment laws is completely illusory; NCU is required to comply with employment laws that apply to it whether it promises to do so or not. *Francom v. Costco Wholesale,* 98 Wash. App. 845, 867, 991 P.2d 1182  (2000); *Gonzales v. Barrett Business Services, Inc.,* 2006 WL 1582380 (E.D. Wash. June 6, 2006).  Second, Richardson cannot prove that she justifiably relied on the alleged promises.  Finally, with respect to the faculty review panel, Richardson cannot prove that she was damaged as a result of any alleged breach.

## X.    Damages

NCU moves for summary judgment on Richardson's request for punitive damages under Title VII for lack of proof.   Title 42 U.S.C. § 1981a(b) provides in pertinent part:  "A complaining party may recover punitive damages under this section against a respondent...if the complaining party demonstrates that the respondent engaged in a discriminatory practice or

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  Intentional discrimination is not sufficient to meet this heightened evidentiary showing for punitive damages.  *Ngo v. Reno Hilton Resort Corp.,* 140 F.3d 1299, 1304 (9th Cir. 1998) ("the language of §1981a…require[s] plaintiffs seeking punitive damages to make a showing beyond the threshold level of intent required for compensatory liability.")  Here, there is no evidence to prove malice or reckless indifference.

Under Oregon law, a plaintiff in a civil action seeking emotional distress may not recover noneconomic damages in excess of $500,000.[4]  ORS 31.710.  Here, on many of her state law claims, Richardson pled noneconomic damages "in amount to be proven at trial but no greater than $10,000,000[.]"  *See, e.g.,* Sec. Am. Comp. ¶ 43.  Her request for non-economic damages over and above $500,000 should be dismissed as a matter of law pursuant to the statute.  *See Prasnikar v. Our Savior's Lutheran Church,* 79 F.Supp.3d 1184 (D. Or. 2015) (granting defendant's motion for partial summary judgment with respect to non-economic damages in excess of $500,000).

Finally, NCU moves for summary judgment on Richardson's request for punitive damages under Oregon law for lack of proof.  Punitive damages may only be recovered under the most egregious circumstances and where there has been a particularly aggravated violation of a societal interest.  *Noe v. Kaiser Foundation Hospitals,* 248 Or. 420, 435 P.2d 306 (1967).

---

[4] NCU is unaware of a District of Oregon decision or an Oregon appellate decision confirming the application of ORS 31.710 to a claim under ORS Chapter 659A for damages arising from emotional injury or distress.  That is not particularly surprising, however.  Until January 1, 2008, when House Bill 2260 expanded the available remedies, the available remedies for violations was limited to a remedy of economic damages; the statutory cap on noneconomic damages under ORS 31.710(1) was therefore inapplicable.

"[T]he conduct must go beyond mere carelessness to a willful or reckless disregard of a risk of harm to others of a magnitude evincing a high degree of social irresponsibility." *Schmidt v. Pine Tree Land Dev.,* 291 Or. 462, 466, 631 P.2d 1373, 1375 (1981). This standard is codified at ORS 31.730(1). Specifically, a plaintiff, to sustain a punitive damages claim, must offer evidence to show that the defendant "acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with conscious indifference to the health, safety, and welfare of others." Here, there is no evidence to suggest that NCU engaged in any malicious or reckless conduct.

## CONCLUSION

For the reasons given above, summary judgment should be granted in NCU's favor on all of Richardson's claims.

DATED: October 25, 2016.

MERSEREAU SHANNON LLP


_____/s/ Karen M. Vickers_____
**KAREN M. VICKERS,** OSB No. 913810
kvickers@mershanlaw.com
**BLAKE H. FRY,** OSB No. 100128
bfry@mershanlaw.com
**BETH F. PLASS,** OSB No. 122031
bplass@mershanlaw.com
503.226.6400
Of Attorneys for Defendant

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400