**KAREN M. VICKERS,** OSB No. 913810
kvickers@mershanlaw.com
**BLAKE H. FRY,** OSB No. 100128
bfry@mershanlaw.com
**BETH F. PLASS,** OSB No. 122031
bplass@mershanlaw.com
MERSEREAU SHANNON LLP
One SW Columbia Street, Suite 1600
Portland, Oregon 97258-2089
Telephone: 503.226.6400
Facsimile: 503.226.0383

      Of Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| COTY RICHARDSON,<br><br>      Plaintiff,<br><br>v.<br><br>NORTHWEST CHRISTIAN UNIVERSITY,<br>an Oregon Corporation,<br><br>      Defendant. | Case No. 6:15-cv-01886-AA<br><br>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>*ORAL ARGUMENT REQUESTED* |

## INTRODUCTION

Defendant Northwest Christian University ("NCU") submits this memorandum in opposition to plaintiff Coty Richardson's ("Richardson") motion for summary judgment on her claims for marital status discrimination, sex/gender discrimination, and pregnancy discrimination claims. NCU incorporates by reference the factual statement and legal argument submitted in support of its motion for summary judgment, dkt. #35.

///

///

PAGE 1 -    RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# FACTS

The factual record in this case is largely undisputed. For the purposes of NCU's response to Richardson's motion, however, the following facts demand particular attention:

- Richardson represented to NCU, on multiple occasions, that she embraced NCU's Christian standards and looked forward to demonstrating a maturing Christian faith. Vickers Decl. Ex. A., pgs. 12, 13-14. She has admitted that Christian standards do not permit premarital sex. Supp. Vickers Decl. Ex. A (Richardson Dep. 107:20-22).

- NCU has a policy prohibiting cohabitation outside the bonds of marriage. Vickers Decl. Ex. E. It has consistently upheld its policy with male and female employees. NCU MSJ at pgs. 14-15. When NCU learns of a potential violation of its policy, it meets with the employee and requires him or her to discontinue cohabiting. *Id.*

- NCU learned that Richardson had engaged in sex outside the bonds of marriage. It did not immediately terminate her employment; but it informed her that as a condition of her employment, she was required to discontinue her cohabitation relationship. Vickers Decl. Ex. A. pg. 34. This meant that NCU did not want Richardson to continue having a non-marital sexual relationship and it did not want Richardson to live with her romantic partner. Supp. Vickers Decl. Ex. B (Lindsay Dep. 77:9-81:14).

- If Richardson had committed to up holding NCU's faith-based standards, she could have continued to work at NCU. Supp. Vickers Decl. Ex. A (Richardson Dep. 197:14-19).

///

///

///

PAGE 2 -    RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**ANALYSIS**

**I.   NCU did not discriminate against Richardson on the basis of gender or pregnancy.**

Richardson makes various arguments in an attempt to convince this court that NCU's decision to terminate her employment amounted to pregnancy/sex discrimination under Title VII and Oregon law. Her complaint, statement of facts, and deposition testimony, however, concede that she was terminated for a legitimate, non-discriminatory reason: violating NCU's policy and then refusing to commit to upholding it in the future.

The Pregnancy Discrimination Act ("PDA") "does not protect any right to engage in premarital sex." *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1319 (11th Cir. 20012). And it does not require employers to provide women with special treatment. Instead, consistent with Title VII, the PDA requires that pregnant women are treated the same as all other employees. *See* 42 U.S.C. § 2000e(k); *Maldonado v. United States Bank,* 186 F.3d 759, 762 (7th Cir. 1999).

None of the cases cited by Richardson in support of her motion for partial summary judgment says otherwise. Rather, they uniformly hold that if a religious educational institution bases its employment decision on a policy "which emanates from the religious and moral precepts of the school, and if that policy is applied equally to male and female employees, then the school has not discriminated on the basis of pregnancy in violation of Title VII." *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 658 (6th Cir. 2000); *see also Boyd v. Harding Academy of Memphis, Inc.,* 88 F.3d 410 (6th Cir. 1996)*; Ganzy v. Allen Christian Sch.,* 995 F. Supp. 340, 344 (E.D.N.Y. 1998); *Dolter v. Wahlert High Sch.,* 483 F.Supp. 266, 270 (N.D. Iowa

1980). Courts afford these policies great deference when, like here, they are grounded in religious doctrine. *See Cline,* 206 F.3d at 658.

The relevant question with respect to Richardson's claims for sex/pregnancy discrimination is whether NCU's policy prohibiting cohabitation outside of the bonds of marriage is enforced in a gender neutral manner. Because it is, Richardson's motion for summary judgment respecting these claims should be denied.

**A. NCU applies its cohabitation policy in a gender-neutral fashion.**

As discussed above, multiple courts have found that religious-based restrictions on extramarital and pre-marital sex are enforceable, so long as enforced in a gender-neutral fashion. Such policies serve as a legitimate, non-discriminatory reason for termination – and thus constitute a complete defense to Title VII and Oregon law discrimination claims. *See Boyd,* 88 F.3d at 413.

Richardson concedes this point, but urges that she is entitled to judgment in her favor because NCU "passively enforces" its policy. Dkt. 33 Plt. MSJ at 29. Neither Title VII nor the cases interpreting it hold that so-called passive enforcement – enforcing policies upon knowledge of a violation – transforms an otherwise legitimate, non-discriminatory policy into a discriminatory policy. Instead, two courts have noted that non-marital sex policies *may* be pretextual under Title VII if enforced *solely* through observing pregnancy. *Cline,* 206 F.3d at 667 ("[A] school cannot use the mere observation or knowledge of pregnancy is its *sole* method of detecting violations of its premarital sex policy."); *Vigars v. Valley Christian Ctr. of Dublin,* 805 F. Supp. 802, 808 (N.D. Cal. 1992). This is because only female employees can get pregnant.

In *Cline,* the Sixth Circuit overturned a summary judgment finding in favor of a Catholic school on a teacher's pregnancy discrimination claim because the district court had improperly applied the first portion of the *McDonnell Douglas* test. 206 F.3d at 659. The court noted that "morals clauses" governing sexual behavior are generally enforceable as long as they are implemented in a gender-neutral manner. *Id.* at 658, 667.

*Cline* also discussed pretext. There, the violation of the "morals clause" was detected when the parish priest noticed that the plaintiff-teacher was "showing" within one month of her marriage. Thus, the court noted that while a school may enforce such a policy, if a plaintiff proves that a school utilizes pregnancy as its sole method of detecting violations, she has presented sufficient evidence of pretext to survive a *defendant's* motion for summary judgment. *Id.* at 667. But the court did not hold, as Richardson urges the court to do in this case, that it is essentially a *per se* violation of Title VII to "passively" enforce a premarital sex policy; it simply held that the school could not rely on observation or knowledge of a female employee's pregnancy "as its sole method of detecting violations of its premarital sex policy" because only female employees can get pregnant. [1] *Cline,* 206 F.3d at 667.

*Cline* is of little use to Richardson because the record establishes that NCU does not rely on observing pregnancy to detect violations of its policy; it relies on employee reporting. Supp.

---

[1] Richardson's reliance on *Chipman v. Grant Cty. Sch. Dist.,* 30 F. Supp. 2d 975 (E.D. Kent. 1998), is misplaced. In that case, two female students brought suit against their school district, alleging that the school violated Title IX when it excluded them from the National Honor Society on account of their pregnancy outside of wedlock. Respecting the disparate treatment theory, the court held that defendants "have failed to articulate a credible non-discriminatory reason for their NHS pregnancy policy." *Id.* at 980. That analysis has no relevance where, as here, the party moving for summary judgment *concedes* that her opponent has articulated a legitimate, non-discriminatory reason for terminating her employment.

PAGE 5 -     RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Vickers Decl. Ex. B (Lindsay Dep. 123:18-124:3). On the other hand *Boyd* and *Dias* are particularly instructive. In *Boyd*, the Sixth Circuit upheld the termination of a teacher in a religious school associated with the Church of Christ for engaging in premarital sex. *Boyd,* 88 F.3d at 415-16. Affirming a district court ruling for the school, the court of appeals found that enforcement of the "Christian character" and "Christian example" employee handbook provision constituted a legitimate, non-discriminatory rationale for the teacher's termination under *McDonnell Douglas. Id.* The court also found that enforcement of the school's policy did not constitute pretext because the school presented evidence that each time its decision-makers learned of a potential violation of its premarital sex policy it took action, regardless of the gender of the violator. *Id.* at 414.

      Richardson discounts *Boyd* for three reasons. First, she points out that in *Boyd* there was evidence that the school terminated individuals, including men, for engaging in premarital sex. While true, the distinction is immaterial. In *Boyd*, the school's general policy was to terminate most employees who it learned had engaged in premarital sex. 88 F.3d at 412. In contrast, NCU speaks with employees who engage in non-marital sex and requires that they discontinue cohabitating. That Richardson is the only employee who has refused to comply with NCU's policy does not transform the policy into one that is enforced unequally.

      Second, she argues that it is not clear how the school in *Boyd* learned that non-pregnant employees had engaged in non-marital sex. But how the school learned that male employees violated the school's policy is irrelevant; the potentially relevant inquiry is whether the employer relies "solely" on observation or knowledge of pregnancy to detect violations. *See Cline,* 206 F.3d at 667. Finally, she argues that it is not clear whether the school made efforts to apply its

PAGE 6 -      RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

pre-marital sex policy in a nondiscriminatory manner.  This argument is based on a misreading of *Boyd*, which specifically rejected the appellant-employee's contention that the school applied its extramarital sex policy in a discriminatory manner.  *Boyd,* 88 F.3d at 414.

Similarly, in *Dias v. Archdiocese of Cincinnati,* 2013 WL 360355, *4-6 (S.D. Ohio Jan. 30, 2013), the court rejected an employee's assertion in her summary judgment motion that she had presented direct evidence of pregnancy discrimination, even though her employer learned that she had violated the school's moral precepts when the employee reported that she was pregnant by means of artificial insemination, and even though the school originally stated that it terminated her for being "unwed and pregnant" or "pregnant by artificial insemination."  Instead, the court held that *McDonnell Douglas* provided the appropriate framework for analysis.  On that basis, it denied both parties' motions for summary judgment noting that plaintiff's discovery showed that only female employees had been terminated on account of the morals clause.  *Id.* at 5.  Thus, *Dias* suggests that even if this court finds that Richardson proved that NCU does not apply its policy equally – a contention NCU vigorously disputes – she is not entitled to judgment in her favor.  Instead, she is entitled to have a jury empaneled to determine whether unequal application of the policy proves that NCU's "proffered reason is pretextual."  *Id.*

The record in the case at bar is much more like *Boyd* than *Cline*.  According to Richardson's testimony, she voluntarily revealed her pregnancy to school officials before she had started to "show."  Both Lindsay and McNeil expressed surprise at the news of her pregnancy – clear evidence that they had not detected her pregnancy by means of observation.  Moreover, as explained in NCU's motion, pregnancy is not the sole means by which NCU has learned of potential violations of its cohabitation policy.  The school also relies on employee

PAGE 7 -     RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

reporting. When it learns that an employee has potentially violated the policy, NCU meets with that employee and requires him or her to discontinue the cohabitation relationship. NCU applies its policy equally to male and female employees. Richardson was terminated not because of her gender or her pregnancy, but because she refused to commit to upholding NCU's Biblically based standards, a decision which does not violate Title VII or Oregon law. *See Henry v. Red Hill Evangelical Lutheran Church of Tustin,* 201 Cal. App. 4th 1041, 1051-52, 134 Cal. Rptr. 3d 15 (2011). Her motion for summary judgment should be denied.

**B. There is no evidence NCU's policy has a disparate impact on the basis of gender.**

Because Richardson has failed to present any evidence establishing that NCU's policy prohibiting non-marital sex disparately impacts women or pregnant employees, her motion must be denied. Disparate impact claims are subject to specific pleading requirements. Def's MSJ at 25. For the reasons explained in NCU's opening brief, Richardson did not meet those requirements with respect to her disparate impact claims. Accordingly, those claims should be dismissed.

Disparate treatment and disparate impact claims are meant to address the same problem: discrimination. The claims are different, though, because they depend on different proof. Disparate impact claims were created on the rationale that intentional discrimination is often hard to prove. *Finnegan v. TWA, Inc.,* 967 F.2d 1161, 1164 (7th Cir. 1992) (Posner, J.) Thus, a disparate impact claim allows a possible remedy to a plaintiff if she can produce sufficient statistical evidence showing that some employment policy she cannot prove was motivated by intentional discrimination nonetheless had a discriminatory effect.

///

PAGE 8 -    RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Richardson's disparate impact claim fails on the merits because she has produced absolutely no evidence to show that NCU's facially neutral policy had a discriminatory effect on employees within her protected class (pregnant employees) compared to those outside of that protected class (non-pregnant women or men). To prove her disparate impact claim, Richardson must identify a facially neutral employment policy. She apparently concedes that NCU's policy prohibiting cohabitation outside of marriage is facially neutral, a contention that is directly at odds with the argument she has made in support of her disparate treatment claim. She also now concedes that she violated the policy. The question then is whether Richardson proved that NCU's policy prohibiting cohabitation has a disparate impact on pregnant women or women in general. Richardson has not provided any evidence that NCU's policy prohibiting cohabitation has had a disparate impact on anyone, except herself. Because the record in this case establishes that NCU has applied its policy equally – twice to men and twice to women – Richardson cannot make out a disparate impact claim. NCU MSJ at 14-15.

*Chipman* is inapposite. There, three female students sued their school alleging that it discriminated against them in violation of Title IX when the school's chapter of the National Honor Society denied them entry due to their pregnancies on the basis of a policy that explicitly allowed the school to examine pregnancy as a factor in determining an applicant's character. *Chipman,* 30 F. Supp. 2d at 976-77. The evidence in that case established that 100% of young women who otherwise met GPA admission requirements but who were visibly pregnant or had a child out of wedlock were denied membership. In contrast, the court noted that "as far as the record reflects, defendants' policy excludes 0% of young men who had premarital sexual relations and 0% of young women who have had such relations but have not become pregnant or

elected to have an abortion." *Id.* at 979. On the basis of that statistical evidence, the court found that the plaintiff students had met their burden of showing a likelihood of success on the merits of their disparate impact claim. *Id.* Unlike in *Chipman,* Richardson has failed to present any statistical evidence to support her disparate impact claim.

### C. NCU's policy is not facially discriminatory.

A facially discriminatory policy is a policy that explicitly relies on a protected characteristic. *Cmty. House, Inc. v. City of Boise,* 490 F.3d 1041, 1049-50 (9th Cir. 2007). Richardson contends that NCU's practice is facially discriminatory because the school allegedly terminates unmarried pregnant women. NCU does not have a policy of terminating unmarried pregnant women. NCU has a policy prohibiting employees from cohabitating outside of the marital relationship, and requiring employees act in accordance with this policy. It applies the same standard to married, unmarried, pregnant, non-pregnant, male and female employees. Richardson's motion should be denied. *See Dias,* 2013 WL 360355, at *4-6 (holding *McDonnell Douglas* provides the proper framework for pregnancy discrimination claims arising out of application of religious employer's morals clause and rejecting argument that termination for pregnancy by artificial insemination is a per se violation of Title VII).

## II. A religious employer's policy prohibiting cohabitation does not violate Oregon law's prohibition on marital status discrimination.

Richardson was terminated because she engaged in a cohabitation relationship and declined to commit to discontinuing that relationship. There is no indication that by protecting employees from "marital status" discrimination the Oregon Legislature intended to protect employees who violate an employer's religious based policy prohibiting sex outside of the bonds

of marriage. Richardson's motion should be denied.

### A. Marital status does not include conduct.

NCU agrees that no court has specifically decided whether the term "marital status" as used in ORS 659A.030 includes a sexual relationship. However, Oregon courts have indicated that the marital status discrimination law does not preclude an employer from terminating an employee on the basis of her personal romantic relationships, particularly where the personal relationships violate a policy that it has equally applied to married and single employees.

In *Patton v. J.C. Penney Co., Inc.,* the Oregon Supreme Court held that it was not unlawful for an employer to terminate an employee for engaging in a personal relationship, even though the subject relationship did not impact the employee's ability to perform his job. 301 Or. 117, 719 P.2d 854 (1986), abrogated on other grounds by *McGanty v. Staudenraus,* 321 Or. 532, 901 P2d 841 (1995). In that case, J.C. Penney instructed a male employee to break off a social relationship with a female employee. There, like here, the employee responded that he did not socialize with his female companion at work, and that he intended to continue seeing her on his own time. When he refused J.C. Penney terminated his employment. In analyzing the employee's wrongful termination claim, the Oregon Supreme Court specifically held that the termination did not violate any state or federal law:

> Plaintiff's acts were voluntary and no state or federal law mandates or prohibits discrimination on that account. It may seem harsh that an employer can fire an employe because of dislike of the employe's personal lifestyle, but because the plaintiff cannot show that these actions fit under an exception to the general rule, plaintiff is subject to the traditional doctrine of 'fire at will.'

*J.C. Penney,* 301 Or. at 122.

And, in *Serrano v. Multnomah County,* 2001 WL 34043441 (D. Or. Aug. 14, 2001), Judge Ashmanskas granted summary judgment in favor of an employer who terminated an employee for marrying a former client. The court held that the employee could not establish a claim for marital discrimination because she could not prove that other single employees who violated her employer's rules regarding personal relationships with clients had been treated differently. *Id.* at *8-9.

"Marital status" as used in ORS 659A.030 should not be interpreted to vitiate NCU's Biblically based prohibition on sex outside the marital relationship. Instead, the court should follow the lead of *J.C. Penny* and *Serrano*, and hold that an employer does not engage in marital status discrimination unless it applies its policies differently to single and married employees.

> **B. The most analogous state court decisions have held that marital status does not protect an employee who violates her employer's policy prohibiting premarital sex or cohabitation.**

There are very few cases from outside of Oregon examining whether state laws prohibiting marital status discrimination in employment requires a religious employer to permit its employees to engage in non-marital sex. The two most analogous cases, however, hold that terminating an employee at a religious school for engaging in non-marital sex does not amount to marital status discrimination. Contrary to Richardson's suggestion, Plt. MSJ at 17-18, neither case justified its holding on a criminal statute prohibiting unmarried sex or on a general policy promoting marriage.

In *Parker-Bigback v. St. Labre Sch.,* 301 Mont. 16, 7 P.3d 361 (2000), the Montana Supreme Court held that a school affiliated with the Catholic church did not discriminate on the basis of sex or marital status when it terminated an employee for cohabitating with a man to

PAGE 12 -    RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

whom she was not married. The court explained that "it would have made no difference whether Bigback was married or single. If she had cohabited with someone of the opposite sex to whom she was not married, the same result would have occurred." *Id.* at 20. Accordingly, it upheld the grant of summary judgment in favor of the religiously affiliated school. *Id.* at 21-22.

A California appellate court reached a similar decision in *Hope Int. Univ. v. Superior Court,* 119 Cal. App. 4th 719, 14 Cal. Rptr.3d 643 (2004). There, two university professors employed by a Christian school affiliated with the Church of Christ brought suit alleging that they were terminated because, among other things, the school perceived that they had engaged in an extramarital affair. The court held that the marital status claim was not cognizable to the extent that it was predicated on the perception that the professors were engaging in an adulterous affair: "There is no evidence that Hope cares at all whether its professors are married, single, or divorced, just as long as they are not perceived by its students to be committing adultery or fornication."[2] *Id.* at 744.

### C. Interpretation of ORS 659A.030 is a question of law.

In Oregon, courts give weight to agency interpretations of their own regulations, not agency interpretations of statutes. *Don't Waste Or. Comm v. Energy Facility Sitting Council,* 320 Or. 132, 140-43, 881 P.2d 119 (1994); *England v. Thunderbird,* 315 Or. 633, 638, 848 P.2d 100 (1993). A court reviews an agency's interpretation of a statute "to ensure that it is consistent with the legislature's intent." *Blachana, LLC v. BOLI,* 354 Or. 676, 687, 318 P.3d 75 (2014) (citation omitted). In doing so, "the agency's interpretation is *not entitled to deference on*

---

[2] The court permitted the employees' marital status discrimination claim predicated on the school's enforcement of its anti-nepotism policy to proceed. *Id.* at 724.

PAGE 13 -   RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*review*." *Id.* (emphasis added)

Notwithstanding, *In re Matter of Wal-Mart Stores East, Inc.,* provides very little guidance. First, there is no evidence that Wal-Mart challenged the meaning of the term "marital status," which makes sense given that Wal-Mart had very strong factual defenses to the allegations at issue. Second, because the Commissioner found that the allegations were not credible, there was no occasion to engage in a protracted analysis of the meaning of "marital status." Finally, the Commissioner's decision makes note of the fact that Wal-Mart did not have a fraternization policy prohibiting relationships between the complaining co-worker and the man with whom she had a relationship, a point which suggests that the analysis would have been different if Wal-Mart had such a policy. *In re Matter of Wal-Mart Stores East, Inc.,* 22 BOLI 27, 33-34 (2007).

### D. ORS 659A.006 bars Richardson's marital status discrimination claim.

Oregon law permits religious institutions, like NCU, to prefer employees on the basis of religion. ORS 659A.006(4); NCU MSJ at 23-24. NCU agrees that no court has analyzed this religious exemption, and similarly agrees that it should be applied in a similar fashion as the federal exemption under Title VII. *See* Plt. MSJ at 34 n. 14.

Under Title VII's religious exemption, "[t]he decision to employ individuals 'of a particular religion' under §2000e-2(e)(2) has been interpreted to include the decision to terminate an employee whose *conduct* or religious beliefs are inconsistent with those of its employer." *Hall v. Baptist Mem'l Healthcare Corp.,* 215 F.3d 618, 624 (6th Cir. 2000) (emphasis added); *Little v. Wuerl,* 929 F.2d 944, 951 (3d Cir. 1991). The court should construe ORS 659A.006(4) in the same fashion. Thus, if the court is decides that "marital status" discrimination is

PAGE 14 -    RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

implicated when an employee is terminated for engaging in premarital sex, it should then hold that ORS 659A.006(4) permits religious employers to terminate employees whose conduct – engaging in premarital sex and refusing to conform their lifestyle to faith-based expectations – is inconsistent with the religious beliefs of their employers.  *See Red Hill,* 201 Cal. App. 4th at 1052; *Vigars v. Valley Christian Center,* 805 F. Supp. 802, 805 (N.D. Cal. 1992).

### E. Interpreting ORS 659A.030 to require NCU to permit non-marital sex violates the First Amendment of the United States Constitution.

The First Amendment of the United States Constitution protects the right to associate with others for "political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees,* 468 U.S. 609, 622 (1984) (citations omitted).  Included in the right to associate is the right not to associate.  *Id.*  To determine whether an organization is protected by the right of expressive association, the court must answer two questions.  First, does the organization "engage in some form of expression, whether it be public or private"?  *Dale,* 530 U.S. at 648.  Second, would the law at issue "significantly affect the [organization's] ability to advocate public or private viewpoints"?  *Id.* at 641, 650.  Both questions require an affirmative answer here.

First, there is no question that NCU engages in "some form of expression."  *Id.* at 648.  NCU is a private, non-profit organization.  According to its bylaws, NCU's purposes include educating students "for a variety of vocations and professions, while grounding all of its degrees in biblical studies and Christian values" and maintaining a community in which "faculty and students strive together for knowledge, understanding, and meaning in relation to the life of Jesus Christ."  De Young Decl. ¶¶ 5-7, Ex. 3, pgs. 1-2.  NCU engages in a wide variety of expressive

activities, including Christian worship services, Bible study, prayer, and religious singing. Lindsay Decl. ¶ 4, 5.  In class, NCU professors are expected to "inculcate [students] with [NCU's] values – both expressly and by example." *Dale,* 530 U.S. at 649.  A group "that seeks to transmit such a system of values engages in expressive activity." *Id.* at 650 (citation omitted).

Second, forcing NCU to allow individuals – like Richardson – who disagree with its Christian beliefs and refuse to uphold Christian practices would "significantly affect [NCU's] ability to advocate public or private viewpoints." *Dale,* 530 U.S. at 641, 650.  NCU has a policy prohibiting sexual relations outside the bonds of marriage.  This policy is grounded in Holy Scripture.  NCU teaches that sexual relations outside the bonds of marriage is inconsistent with its Christian values.  The court must accept NCU's assertion.  *Dale,* 530 U.S. at 651.  Forcing NCU to employ individuals who openly reject this aspect of the Christian faith would force NCU to send a message to its students and its community that it views non-marital sex as a legitimate form of behavior.  Thus, if the court interprets ORS 659A.030 to prohibit an organization from terminating an employee on the basis of non-marital sex, the court should find that applying that statute to NCU in this instance violates NCU's First Amendment right to expressive association.

### F. Interpreting ORS 659A.030 to require NCU to permit non-marital sex violates the Oregon Constitution.

When a law is challenged under Article I, sections 2 and 3 of the Oregon Constitution, the first question is whether the law is facially neutral and has been uniformly applied. Government must be neutral toward religion, and thus laws must be both neutral on their face and in their policy.  *Cooper v. Eugene Sch. Dist., No. 4J,* 301 Or 358, 368, 723 P.2d 298 (1986); *see also Salem Coll. & Acad. Inc. v. Employment Div.,* 298 Or. 471, 489, 695 P.3d 25 (1985).

Once a law is evaluated for neutrality, the particular facts of the case are evaluated to determine if an as-applied exemption is mandated by Article I, sections 2 and 3.  *See State v. Brumwell,* 350 Or. 93, 108, 249 P.3d 965 (2011) ("[W]hen faced with a challenge to the application of a general rule that [is] 'neutral toward religion on its face and in its policy' to religiously motivated conduct, the only issues [are] the statutory authority to make such a regulation and an individual claim to exemption on religious grounds." (internal quotations omitted)); *Cooper,* 301 Or at 368-69 (acknowledging that facially neutral laws are subject to "claims to exemption on religious grounds"); *see also Salem College,* 298 Or at 486 (noting that some courts have held certain religious activities immune from regulation).  While the Oregon Supreme Court has repeatedly acknowledged that neutral laws are subject to as-applied claims for exemption, it has not announced a definitive test for when exemptions are appropriate. *Brumwell*, 350 Or. at 108.

If the court is inclined to interpret ORS 659A.030 to require employers to permit employees to engage in non-marital sex, it should use its authority to exempt NCU from this statute based on its sincere religious objections.  The purpose of Oregon's broadly-worded Worship and Conscience Clauses reflect respect and tolerance for people of different beliefs. *See id* at 108 n. 16.  The principles animating the state's constitutional protections for worship and conscience counsel strongly in favor of an exemption for religious employers whose faith forbids non-marital sex.

///

///

///

PAGE 17 -    RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## CONCLUSION

For the foregoing reasons, NCU respectfully requests that the court deny Richardson's motion for partial summary judgment.

DATED: November 18, 2016.

MERSEREAU SHANNON LLP

*/s/ Karen M. Vickers*
**KAREN M. VICKERS,** OSB No. 913810
kvickers@mershanlaw.com
**BLAKE H. FRY,** OSB No. 100128
bfry@mershanlaw.com
**BETH F. PLASS,** OSB No. 122031
bplass@mershanlaw.com
503.226.6400
    Of Attorneys for Defendant